Commonwealth *v.* Kates, Appellant.
Commonwealth *v.* McClellan, Appellant.
Allen, Petitioner, *v.* Reed.

Argued January 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

104

*John W. Packel,* Assistant Defender, with him *Francis S. Wright,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for petitioner and appellants.

*Judith Dean,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

*James D. Crawford,* Deputy District Attorney, and *Arlen Specter,* District Attorney, for respondent.

OPINION BY MR. JUSTICE NIX, May 8, 1973:

The principal issue presented in this consolidated appeal is whether a probation violation hearing may

be held prior to the trial for criminal charges which are based on the same activities which gave rise to the alleged probation violation. In each of these cases the hearing judge held, or attempted to hold, the violation of probation hearing prior to the probationer's trial on the substantive offense. *Commonwealth v. Kates* and *Commonwealth v. McClellan* are appeals from probation revocations and judgments of sentence imposed; *Allen v. Reed* is a petition for writ of prohibition which seeks to prevent a revocation hearing on James Allen's alleged probation violation from being held prior to his trial on the substantive criminal charge. A separate factual summary for each of the appeals follows.

## Commonwealth v. Kates

In October of 1969, the appellant, Daisey Kates, was tried, in a non-jury trial, on charges of wantonly pointing a firearm and aggravated assault and battery. Following an adjudication of guilt, she was placed on three years probation on the charge of aggravated assault and battery, and sentence was suspended on the charge of wantonly pointing a firearm. In June of 1970, Miss Kates was again arrested, this time for homicide, and on July 16, 1970, a revocation of probation hearing was conducted. Primarily on the basis of an incriminating statement attributed to the appellant, the hearing judge found that she had shot and killed Frank Jordan. Her three year probation was revoked and she was sentenced to three years in the State Correctional Institution at Muncy, which was subsequently reduced to twenty-three and one-half months. Appellant did not testify at this hearing.

After imposition of this sentence, post-trial motions on the aggravated assault and battery charge were allowed to be filed nunc pro tunc. Following argument, these motions were denied and an appeal was filed in

Superior Court. This appeal was certified to us to be heard with the two companion cases which raised the issue of the propriety of holding the violation hearing prior to the trial.

Subsequent to the revocation of probation, a motion to suppress the statement made by appellant was granted. No appeal was taken from that ruling and appellant was eventually found not guilty of the slaying of Frank Jordan.

### Commonwealth v. McClellan

Cleo McClellan entered a plea of guilty to the charge of burglary and on November 18, 1969, was placed on eight years probation. On December 1, 1969, appellant was arrested and charged with assault with intent to ravish. On April 8, 1970, prior to trial on the new offense, a violation of probation hearing was conducted[1] and the hearing judge revoked probation and sentenced appellant to a term of three to ten years. At the hearing, a police officer testified that he saw the appellant struggling with a young lady, pulling her in one direction while she was pulling away from him, and that as soon as the police car approached the girl came over to it and appellant quickly walked away. Appellant was advised by counsel not to testify at the hearing since his testimony there might prejudice him at his subsequent trial on the criminal charges.

Following the revocation of his probation, appellant was tried on the criminal charges, which were the basis for the probation revocation. He was found

---

[1] This was the second violation of probation hearing. A prior hearing had been held on February 9, 1970, but the hearing judge determined that the appellant had not been afforded his constitutional right to confront his accusers.

guilty of assault and battery, and not guilty of assault with intent to ravish.

An appeal was taken from the sentence imposed at the revocation hearing. The Superior Court affirmed the judgment of sentence. This appeal followed.

## Allen v. Reed

On May 7, 1971, James Allen entered a plea of guilty to charges of riot and conspiracy and was sentenced to concurrent probationary terms of five and two years. On May 23, 1971, police stopped an automobile in which the appellant was a passenger and found in it a single packet of narcotics. Allen was then arrested and charged with possession and use of narcotics. Appellant's request that the revocation hearing be continued until after the trial that would determine whether appellant was in fact guilty of possession of narcotics was denied.

On July 12, 1971, the day scheduled for the probation violation hearing, counsel for appellant filed a petition for writ of prohibition with this Court and the hearing judge agreed to postpone his violation hearing until after our decision on the writ.

### I. Applicable Statutory Authority

As noted, the issue shared by each of these appeals concerns the propriety of holding probation violation hearings where the alleged violation consists of activities which also constitute the basis for criminal charges before the trial for these subsequent offenses has been held. No question has been raised concerning the power of the court in the first instance to impose the order of probation and the parties also agree that the court does have the power to revoke a probation and impose a prison sentence when there has been a viola-

tion of the probation. The dispute arises as to when the hearing to determine whether there has been a violation may be held and the nature of that hearing necessary to comply with due process. To resolve the complex issues presented we must look first to the statutory law of this Commonwealth on the subject.

The trial judges of this state have been granted the right to suspend the imposition of sentence and place an individual on probation under three statutory provisions. The most recent provision is the Act of August 6, 1941, P. L. 861, §25, 61 P.S. §331.25, which provides: "Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence to imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed." The earlier acts were the Act of June 19, 1911, P. L. 1055, §1, *as amended,* 19 P.S. §1051, and the Act of May 10, 1909, P. L. 495, §1, 19 P.S. §1081. Since this section of the latter act contains the identical language of the former we will refer only to the later of the two acts.[2] Section 1 of the Act of 1911 provides: "Whenever any person shall be convicted in any court of this Commonwealth of any

---

[2] Most of the provisions of the Act of 1909 are repeated in the Act of 1911 and where they are inconsistent they have been held to have been repealed by the subsequent act. Act of June 19, 1911, P. L. 1055, §4.

crime, except murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery, or burglary, and it does not appear to the said court that the defendant has ever before been imprisoned for crime, either in this State or elsewhere (but detention in an institution for juvenile delinquents shall not be considered imprisonment), and where the said court believes that the character of the defendant and the circumstances of the case such that he or she is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that the defendant should suffer the penalty imposed by law, the said court shall have power to suspend the imposing of the sentence, and place the defendant on probation for a definite period, on such terms and conditions, including the payment of money for the use of the county, not exceeding, however, the fine fixed by law for conviction of such offense, as it may deem right and proper; said terms and conditions to be duly entered of record as a part of the judgment of the court in such case. No such condition for the payment of money shall be considered as the imposition of a fine or a sentence nor prevent the court from thereafter sentencing any defendant under the act under which he or she was convicted, upon violation of his or her parole."

Unlike the relationship between the Act of 1909 and the Act of 1911, section 1 of the Act of 1911 and section 25 of the Act of 1941 differ in several significant respects. Section 1 restricts the imposition of probation to one who has been convicted of crimes other than murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with the intent to ravish, arson, robbery or burglary. Section 25 only excludes one convicted of murder in the first

degree from receiving the benefits of its provisions. The sections also differ in that section 1 allows probation only to one who has never before been imprisoned for crime and section 25 contains no such restriction.

In construing statutes and defining legislative intention it is axiomatic that the legislature does not intend a result that is absurd, contradictory or unreasonable. Act of May 28, 1937, P. L. 1019, art. IV, §52(1), 46 P.S. §552(1). See *Millersville Annexation Case,* 447 Pa. 310, 290 A. 2d 102 (1972); *Commonwealth v. Public Constructors, Inc.,* 432 Pa. 589, 248 A. 2d 29 (1968). We believe these sections are not at variance. The Act of 1941 was concerned with the establishment of the Pennsylvania Board of Parole. Section 25 allowed our courts to specially order probations to be under the supervision of the board.[3] The reason for section 25 allowing probation to the more serious offender was the legislative confidence in the supervision that would be exercised by the new board that the Act of 1941 had established as opposed to the supervision that would be received by those placed under the various county probation departments as provided by the Act of 1911.[4]

Since the Board was not given authority for either determining a violation or revoking probation for those placed under their supervision under section 25 there was no reason for the Act of 1941 to mention this function and it in fact did not. We disagree with the trial judge who concluded that since the Act of 1941 did not provide for revocation that there was no statutory provision for revocation of a probation imposed under section 25. As has been stated before, in draft-

---

[3] See sections 17 and 26 of the Act of 1941 which also pertain to supervision by the board.

[4] Act of June 19, 1911, P. L. 1055, §3, *as amended,* June 21, 1919, P. L. 569, §1, 19 P.S. §1053.

ing the Act of 1941 the legislature was concerned with the powers and duties of the Board and only referred to probation because it wished to provide the court with the election to place the supervision within the control of the Board. However, there being no change intended in the power to revoke probation where a violation had occurred, there was no need for additional legislation and the power remained as provided by the Act of 1911. We therefore hold that section 4 of the Act of 1911 [5] controls revocations whether the probation was entered under the authority of the Act 1911 or the Act of 1941. [6] Section 4 provides: "Whenever a person placed on probation, as aforesaid, shall violate the terms of his or her probation, he or she shall be subject to arrest in the same manner as in the case of an escaped convict; and shall be brought before the court which released him or her on probation, which court may thereupon pronounce upon such defendant such sentence as may be prescribed by law, to begin at such time as the court may direct." From this review of the applicable statutes it is clear that there is no statutory restriction in this State that would prevent the court from holding a hearing where the alleged violation is the commission of an offense during the probationary period prior to the trial for the subsequent offense.

## II. PROPRIETY OF CONDUCTING REVOCATION HEARING PRIOR TO TRIAL

Although we have found that there is no statutory limitation which restricts a judge of this Common-

[5] Act of June 19, 1911, P. L. 1055, §4, 19 P.S. §1055.

[6] The record reveals that the probations for petitioners Kates and Allen were under the Act of 1911. The probation of petitioner McClellan was placed under the supervision of the Pennsylvania Board of Parole pursuant to the Act of 1941.

wealth in conducting a probation violation hearing prior to the trial of a subsequent offense, appellants urge that constitutional and policy considerations would dictate that this practice should be disallowed. The constitutional argument is based on an alleged "unjustifiable tension" that this procedure supposedly creates between the right against self-incrimination and the right of due process. Appellants rely heavily on *Simmons v. United States*, 390 U.S. 377 (1968), which they consider analogous to the cases before us. In *Simmons,* the defendant, Garrett, was placed in the dilemma of electing to assert a Fourth Amendment claim under the pain of losing a Fifth Amendment right. The testimony necessary to establish this standing to assert the Fourth Amendment claim was an admission of an element of the crime necessary to establish guilt which might not have otherwise been proven. In that case, the Supreme Court reasoned "Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created." 390 U.S. at 393-94 (footnotes omitted).

We are not persuaded by this argument for two reasons. First, we are not convinced that *Simmons* is analogous to the appeals presently before us. In *Simmons*, the defendant did in fact testify during the suppression hearing, the testimony was in fact incriminatory, and the court did permit that testimony to be used against him in the subsequent trial. In the cases of *Commonwealth v. Kates* and *Commonwealth v. McClellan*, the appellants elected to rely upon their Fifth Amendment rights and were permitted to do so. In the case of *Allen v. Reed*, the proceedings were interrupted before the violation hearing was held. Thus, in the appeals before us, the record is barren of any incriminatory statements which could in fact be used against these appellants at the subsequent trial. Also, in this situation it is difficult to conceive of any testimony that may have been helpful during the violation hearing that would be incriminating at the time of trial. The position of the appellants in the instant case is tantamount to a request that we attempt to speculate as to what may have occurred if the appellants had elected to testify and their testimony was introduced against them at the subsequent proceeding. We have held in many cases that we will not attempt to resolve constitutional issues unless the specific issue is before the court and the resolution of the issue is absolutely necessary to the decision of the case.[7]

Secondly, we also reject appellants' contention that *Simmons* is controlling because we believe that the language of *Simmons* is limited by the more recent decision of the Supreme Court in *McGautha v. California*, 402 U.S. 183, 212-13 (1971): "While we have no occa-

---

[7] *See, e.g., Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A. 2d 53 (1971) ; *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 272 A. 2d 883 (1971) ; *Shuman v. Bernie's Drug Concessions,* 409 Pa. 539, 187 A. 2d 660 (1963).

sion to question the soundness of the result in Simmons and do not do so, to the extent that its rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question, and it certainly cannot be given the broad thrust which is attributed to it by Crampton in the present case. The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. McMann v. Richardson, 397 U.S., at 769, 25 L. Ed. 2d, at 772. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."

*McGautha* makes it clear that the constitution does does not eliminate the making of difficult judgments. We are not prepared to say that an election such as the one suggested in this case sufficiently impairs the policies behind the rights involved to the extent that a constitutional prohibition is raised.

Appellant next contends that since a violation hearing was occasioned by the subsequent arrest, a view to the conservation of judicial time and manpower would rule against the conducting of two "trials". This argument assumes that the issues in the two proceedings are identical. We do not agree. At the subsequent trial the issue is whether the elements of the offense or offenses charged are present and the burden is upon the Commonwealth to establish all of the requisite elements beyond a reasonable doubt. The focus of a probation violation hearing, even though prompted by a subsequent arrest, is

whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct.[8]

Nevertheless, appellants argue that in the interest of judicial economy, a violation of probation hearing should not be conducted prior to the trial of the criminal charges which arose out of the same acts. However, we believe that the possibility of duplicating effort is far outweighed by other policies which dictate that the court's right to adjudicate a parole violation prior to the subsequent trial should not be curtailed. This is true because the basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration. When it becomes apparent that the probationary order is not serving this desired end the court's discretion to impose a more appropriate sanction should not be fettered. Initially, when the court decides to impose a probation order it is only after first balancing the interest of society in protecting against possible future criminal behavior of the individual with the benefit he would receive by remaining free from prison. Certainly, society has the right to expect a prompt hearing when a probationer has allegedly engaged in a course of criminal activity.

With respect to this policy argument we also note that other jurisdictions have recently considered the question of whether to conduct a revocation hearing prior to trial and have upheld the procedure. For example, in the Rhode Island case of *Flint v. Howard,*

---

[8] Both the Act of 1941 and the Act of 1911 grant the right of probation where the court has reason to believe that the defendant is not likely to again engage in an offensive course of conduct and that the public good does not demand or require that the defendant should suffer the penalty imposed by law. 61 P.S. §331.25; 19 P.S. §1051.

291 A. 2d 625 (R.I. 1972); it was held that the petitioner was not entitled to be tried on a robbery indictment before the circumstances which led to that indictment could be shown at his deferred sentence violation hearing. This was so notwithstanding the fact that when brought to trial on the robbery charge, petitioner was acquitted. Similarly, in *Borges v. State*, 249 So. 2d 513 (Fla. 1971), the court specifically held that "the mere fact that subsequent criminal proceedings may have been pending against the probationer would not in and of itself be grounds to continue the revocation hearing. The probationer could have lost his right to probation, notwithstanding the fact he may have been acquitted of the subsequent criminal charge." 249 So. 2d at 514. This same result has been reached in at least the following cases: *Davis v. State*, 267 N.E. 2d 63 (Ind. 1971) (the court specifically pointed out that criminal charges were pending on the same acts alleged to constitute the probation violation); *State v. Patterson*, 3 Ore. App. 480, 475 P. 2d 91 (1970) (the court upheld the revocation based in part on an alleged assault and battery even though the probationer had not yet been tried for that crime); *People v. Smith*, 105 Ill. App. 2d 14, 245 N.E. 2d 13 (1969) (the court held that a defendant is not entitled to have a probation revocation hearing delayed until the trial on the criminal offense alleged to have been committed by him during the period of probation).[9]

---

[9] There are other cases dealing with probation violation hearings where the acts constituting the alleged violation amount to criminal activity, but where for some reason there were either no pending criminal charges or the probationer was placed under arrest but the likelihood of his subsequent trial was not noted in the court's opinion. See *Bullock v. State*, 121 Ga. App. 700, 175 S.E. 2d 163 (1970); *State v. Washington*, 5 Ariz. App. 400, 427 P. 2d 381 (1967); *Ortega v. State*, 414 S.W. 2d 465 (Tex. App. 1967).

Several federal cases have also rejected the proposition that it is impermissible to conduct revocation of probation proceedings prior to the trial on the criminal charge. In *United States v. Chambers*, 429 F. 2d 410 (3rd Cir. 1970), the Court of Appeals upheld the denial of a petition to vacate a federal probation revocation order entered after a hearing but prior to a state trial on charges of larceny, receiving stolen goods and operating a motor vehicle without the consent of the owner. Although the revocation order was based partly upon a finding that the appellant was guilty of a hit-run violation, a charge for which he was not prosecuted in the state court, the Court of Appeals also noted that the order was based in part on charges which were then pending in the state court, and of which appellant was later acquitted. To the same effect is *United States v. Markovich*, 348 F. 2d 238 (2d Cir. 1965), where a violation of probation hearing was conducted and probation revoked prior to the trial for burglary in a state court. Again the probation revocation was based not only on the conduct constituting the alleged criminal activity, but also on other acts for which there was no prosecution pending. Similarly, in *Jianole v. United States*, 58 F. 2d 115 (8th Cir. 1932) and *United States v. Feller*, 156 F. Supp. 107 (D. Alaska 1957), it was held that it is not necessary that the probationer be tried and convicted of the crime alleged before a hearing on the revocation of probation may be held.

III. Due Process Requirements

Having concluded that it is permissible to conduct a revocation hearing before trial, we must now determine whether the constitutional rights of the instant appellants were violated. Initially we note that *Morrissey v. Brewer*, 408 U.S. 471 (1972), set out the-

118

minimum due process requirements at a revocation hearing.[10] There the Supreme Court specifically stated: "Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 488-89.

Neither *Morrissey*, nor any other decision that has come to our attention, has required that a revocation hearing be conducted with the same procedural and evidentiary rules as would apply to a trial on the criminal charges growing out of the same facts. In this area of rights of probationers and parolees the controlling factor is not whether the traditional rules of evidence or procedure including Fourth and Fifth Amendment exclusionary rules have been strictly ob-

---

[10] We should also note that we believe that *Morrissey v. Brewer*, supra, is applicable to probation revocations as well as parole revocations and thus the Due Process Clause of the Fourteenth Amendment requires that the state afford an individual some opportunity to be heard prior to a revocation order.

served, but rather whether the probative value of the evidence has been affected. As discussed above, the purpose of the revocation hearing is simply to establish to the satisfaction of the judge who granted probation that the individual's conduct warrants his continuing as a probationer. We are now in the position of determining whether any evidence involved in these appeals must be excluded because of its inherent unreliability.

Other courts have also been confronted with this issue of whether evidence obtained in violation of a probationer's Fourth or Fifth Amendment rights should be admissible for purposes of determining whether probation or parole should be revoked. In *United States ex rel. Sperling v. Fitzpatrick*, 426 F. 2d 1161 (2d Cir. 1970), the Court of Appeals in three separate and carefully considered opinions set down the policy behind holding that ordinary Fourth Amendment exclusionary rules are not applicable to revocation hearings. Judge HAYS stated:

"The exclusionary rule is believed to be a necessary restraint on the adversarial zeal of law enforcement officials. 'As it serves this function, the rule is a needed, but grudgingly taken, medicament; no more should be swallowed than is needed to combat the disease.' Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. Pa. L. Rev. 378, 389 (1964).

". . . A Parole revocation proceeding is concerned not only with protecting society, but also, and most importantly with rehabilitating and restoring to useful lives those placed in the custody of the Parole Board. To apply the exclusionary rule to parole revocation proceedings would tend to obstruct the parole system in accomplishing its remedial purposes.

"There is no need for double application of the exclusionary rule, using it first as it was used here in

preventing criminal prosecution of the parolee and a second time at a parole revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution." 426 F. 2d at 1163-64 (footnotes omitted). To the same effect is *United States ex rel. Lombardino v. Heyd*, 318 F. Supp. 648 (E.D. La. 1970), which dealt with probation. There the court stated: "Expansion of the exclusionary rule to probation revocation hearings would in all likelihood further *its* laudable purpose of deterring unconstitutional methods of law enforcement. But the good to be obtained from such expansion must be balanced against the harm which will result due to the unique nature and purpose of the probation revocation hearing. If the rehabilitative function of the probation system is to be fostered, it seems imperative that the judge charged with the responsibility and discretion to grant, deny or revoke probation be fully aware of all the facts and circumstances in a particular case." 318 F. Supp. at 651 (footnotes omitted). *See United States v. Hill*, 447 F. 2d 817 (7th Cir. 1971).

Similarly, in the area of confessions the California Supreme Court has recently considered the admissibility into evidence at a parole violation hearing of a statement obtained without giving the required *Miranda* warnings. *In re Martinez*, 1 C. 3d 641, 83 Cal. Rptr. 382, 463 P. 2d 734 (1970). There the court held that when the purposes of the procedural safeguards were balanced against the interests of society, such a confession should be admissible for this limited purpose. *Cf. In re Tucker*, 5 C. 3d 171, 95 Cal. Rptr. 761, 486 P. 2d 657 (1971).

We must now turn to the difficult problems presented in the instant appeals.

## Commonwealth v. Kates

The questioned evidence admitted during the course of appellant Kates' revocation hearing was a statement given by her which was subsequently ruled inadmissible because it violated the mandates of *Miranda v. Arizona,* 384 U.S. 436 (1966). As we have stated, this type of constitutional objection does not preclude the evidence from being presented during a probation revocation hearing and does not form the basis of a denial of due process.

Appellant Kates also alleges that she should now be afforded the opportunity of attacking her statement on the grounds of voluntariness. With this contention we cannot agree. At the probation revocation hearing no attempt was made to prove that the statement was coerced in a sense that would destroy its probative value. Further, appellant does not even allege that the claim of a coerced confession was raised at the subsequent suppression hearing. There is nothing in the record before us to contradict the Commonwealth's position that defense counsel confined himself to attacking the confession solely on the grounds that improper *Miranda* warnings were given. The mere fact that appellant was sustained on her *Miranda* claim does not relieve her of the responsibility of raising all other constitutional objections.

Judgment affirmed.

## Commonwealth v. McClellan

Appellant McClellan argues that he was not allowed to confront his accuser at the revocation hearing. Specifically, he contends that the alleged victim of his assault should have been produced by the Commonwealth. At the hearing appellant was confronted with the policeman who witnessed his assault on a young girl. For purposes of a probation violation it is not

necessary that the girl herself appear to testify. Moreover, there is no allegation that the girl was not equally available to the probationer had he wished to call her.

We also note that even though the evidence may not have been sufficient to establish the intent to ravish, this is not controlling for our purposes. Clearly, the evidence established an assault and battery and this of course would also constitute a violation of probation. There is nothing in the record to suggest, as appellant contends, that the decision to revoke probation was influenced solely by the intent to ravish. In fact, the opinion of the lower court indicates that the severity of the sentence was occasioned by appellant's prior conviction and his subsequent involvement in criminal conduct less than two weeks after he was placed on probation.

Judgment affirmed.

## Allen v. Reed

The petition for writ of prohibition is denied and the case remanded for a probation violation hearing in accordance with this opinion.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority in *Commonwealth v. McClellan* and *Allen v. Reed*. However, I am compelled to dissent from the majority's holding in *Commonwealth v. Kates* that the exclusionary rule has no application in probation revocation and subsequent sentencing proceedings. In my view, the record in *Kates* must be remanded to the trial court for a new revocation and sentencing hearing, to be conducted without the admission of the illegally obtained confession. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

As the majority candidly concedes, appellant Kates' probation was revoked and a three year sentence imposed, "[p]rimarily on the basis of an incriminating statement [that appellant had killed one Frank Jordan] attributed to the appellant." Subsequent to these proceedings, however, appellant's statement was suppressed by the trial court in a later prosecution for the murder of Jordan.

It is by now abundantly clear that a statement obtained in violation of *Miranda,* supra, may *not* be used "affirmatively" by the prosecution in its case in chief. *Harris v. New York,* 401 U.S. 222, 224, 91 S. Ct. 643, 645 (1971). Albeit appellant Kates was not, at the time the illegally obtained statement was introduced, on trial for murder, the adverse effect of the revocation and sentencing hearing produced the same result— appellant was remanded to jail to serve a term of imprisonment. *"In practice, probation revocation is frequently used as an alternative to prosecution for serious offenses.* If the probationer is clearly convictable for the new offense, there is little need both to prosecute him for it and revoke his probation. *Often the choice between prosecution and revocation is a fortuitous one."* R. Dawson, Sentencing, The Decision as to Type, Length, and Conditions of Sentence, 153 (1969) (emphasis added). Accordingly, ". . . the fact that an independent prosecution and revocation under an old conviction are often interchangeable for a probationer suggests that abrogation of the exclusionary rule for probation revocation would seriously undermine the rule's effect as a deterrent." *United States v. Hill,* 447 F. 2d 817, 820 (7th Cir. 1971) (FAIRCHILD, J., dissenting).

The necessity for the exclusionary rule, especially on the facts of this case, need not be rationalized solely in terms of its usefulness as a deterrent to unlawful police conduct. "The philosophy that courts must not

sanction violations of constitutional rights is as evident in the opinion which promulgated the exclusionary rule as is the more pragmatic proposition that the rule will deter the police from such activities. This 'imperative of judicial integrity,' as it is termed in Elkins v. United States (1960), 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669, though not as clearly and consistently enunciated in support of the exclusionary rule as the theory of its expediency as a deterrent, continues to be recognized as one of its foundations. '[A] ruling admitting evidence in a criminal trial * * * has the necessary effect of legitimizing the conduct which produced the evidence.' " [*Terry v. Ohio*, 392 U.S. 1, 13, 88 S. Ct. 1868, 1875 (1968)]¹ Id. (footnotes omitted).

Regardless of the purpose attributed to the exclusionary rule, under either theory, it (the rule) should apply with equal vitality to a probation revocation proceeding, such as here, where the ultimate aim of the authorities is to return the probationer to custody. *Cf. Commonwealth v. Bruno*, 435 Pa. 200, 223, 255 A. 2d 519, 528 (1969) (ROBERTS, J., dissenting). The incentive for illegal police conduct in the circumstances of this case is all too clear. While many courts are finding it necessary to extend the use of the exclusionary

---

¹ "But it is not deterrence alone that warrants the exclusion of evidence illegally obtained—it is 'the imperative of judicial integrity.' [Elkins v. United States, 364 U.S. 206, at 222, 80 S. Ct. 1437]. The exclusion of an illegally procured confession and of any testimony obtained in its wake deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government's illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law." *Harrison v. United States*, 392 U.S. 219, 224 n. 10, 88 S. Ct. 2008, 2011 n. 10 (1968).

rule to a wider myriad of circumstances,[2] this Court today, ignoring absolute constitutional mandates to the contrary, carves out an unlimited exception which impugnes the integrity of the judicial process. The majority has erred, in my view, by treating *Miranda,* supra, as a mere rule of procedure. The exclusionary rule with which we are here concerned is not that. Rather, it is an integral part of the Fifth Amendment right against self-incrimination, devised not under the aegis of the Supreme Court's supervisory power, but rather as an interpretation of the Constitution itself. *Miranda,* supra at 490, 86 S. Ct. at 1636, *Verdugo v. United States,* 402 F. 2d 599 (9th Cir. 1968); *Michaud v. Oklahoma,* 505 P. 2d 1399 (Okl. Cr. 1973).

I cannot condone the use of a confession obtained by the police in violation of the law, even for the purpose of determining whether probation should be revoked. As the Supreme Court stated in *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S. Ct. 407, 416 (1963), constitutionally, illegally obtained evidence ". . . shall not be used at all." (Quoting from *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S. Ct. 182, 183 (1920)). See *Michaud,* supra.

Not only was it error, in my opinion, for the court to have considered the illegally obtained confession in

---

[2] See, e.g., *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S. Ct. 1246 (1965) (exclusionary rule applicable to forfeiture proceedings, where the "object, like a criminal proceeding, is to penalize for the commission of an offense against the law."); *United States ex rel. Brown v. Rundle,* 417 F. 2d 282 (3d Cir. 1969) (exclusionary rule applicable to sentencing proceedings); *Pizarello v. United States,* 408 F. 2d 579 (2d Cir. 1969) (exclusionary rule applies to tax assessment cases); *Powell v. Zuckert,* 366 F. 2d 634 (D.C. Cir. 1966) (exclusionary rule applies to discharge proceedings against a government employee); *Rogers v. United States,* 97 F. 2d 691 (1st Cir. 1938) (exclusionary rule applies to actions for the recovery of customs duties).

126

deciding to revoke appellant Kates' probation, but it was also error for the court to have considered it in determining appellant's sentence. The law is well settled that the ". . . sentencing procedure . . . [does] not satisfy due process requirements when a confession, constitutionally inadmissible in evidence, . . . [is] part of the data used by the court in determining the severity of the sentence." *United States ex rel. Brown v. Rundle*, 417 F. 2d 282, 284-85 (3d Cir. 1969). See also *Verdugo*, supra; *United States ex rel. Rivers v. Myers*, 384 F. 2d 737 (3d Cir. 1967). "[W]henever it is held that the deterrent value of the exclusionary rule justifies the release of a guilty man, courts necessarily also surrender the opportunity of imposing sentence upon him —the loss of this opportunity is not regarded as too great a price for insuring observance of . . . [constitutional] restraints by law enforcement officers." *Verdugo*, supra at 611-12.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. Constitutional protections apply to all persons at all times. There is no exception. The majority, however, holds that an individual who is at liberty in our society with the status of probationer has less constitutional rights than a member of our society who is not a probationer. I can find no basis for two classes of citizens in our scheme of constitutional protections. A person who has been convicted of a crime and placed on probation cannot, because of such *status*, be deprived of his constitutional rights. Regardless of his status, he is entitled to all of the normal constitutional protections when he is *accused of committing a crime*.

In view of the silence of the probation statutes concerning the rights of a person on probation who is accused of criminal conduct, we should look not only to

the constitutional protections which admit of no exceptions but also to other relevant expressions of legislative policy.

Although the probation statutes are silent, we have very specific guidance in the Pennsylvania law concerning persons on parole, who are not in any significant manner different from persons on probation. The legislature has provided that a person's parole cannot be revoked for the alleged commission of a crime unless and until the parolee is *convicted* of the alleged crime or pleads guilty or nollo contendere in a court of record. Act of August 6, 1941, P. L. 861, §21.1, added 1951, August 24, P. L. 1401, §5, as amended, Act of June 28, 1957, P. L. 429, §1, 61 P.S. 331.21a. The parole can only be revoked *after the conclusion of the criminal trial* for the alleged crime with all the attendant constitutional protections. Thus, a person on parole accused of crime is treated as any other citizen so far as constitutional protections are concerned. The legislature, in the case of persons on parole, has recognized that there is no caste system where constitutional guarantees are concerned.

The majority, in effect, deprives a person on probation of constitutional protections which are not taken away from *any person* by the Pennsylvania Constitution or the federal Constitution and which have not been taken away by the legislature from persons on parole. The majority's attempt to take away the normal constitutional protections from persons on probation has no support except "silent statutes."

In all three of the cases before us, a person is accused of crime and no penalty of any kind can be imposed upon such person until the completion of the criminal trial. A person is presumed innocent of criminal conduct until proven guilty in a criminal trial. The presumption of innocence even applies to a prisoner

accused of a crime while serving his term. An incarcerated person cannot be given any additional imprisonment time because *he is accused of crime*. No penalty of any kind can be imposed on such incarcerated person until a criminal trial is held. A person who is convicted of a crime and *has not been incarcerated* should not have less rights.

The majority relies heavily on *Morrisey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). That case, however, concerned parole violations *other than the commission of a crime*. Such violations are commonly known as *technical violations*. The three cases before us do not involve *technical violations*.

The unfairness in the holding of the majority is seen in two of the three cases before us. The majority concludes that persons *acquitted* of a crime can nonetheless suffer a penalty because of the very crime of which they have been acquitted. Such a result is illogical and unconstitutional. In the criminal *trial*, the defendant is acquitted but in the probation revocation *trial*, the defendant is guilty. I cannot condone such double jeopardy of the defendant's liberty.

In the appeal of Daisey Kates, the majority compounds its error by holding that a statement obtained in violation of the appellant's constitutional rights is admissible in a probation hearing. A statement obtained in violation of a person's constitutional rights under the Fifth and Sixth Amendments and under Article I, Section 9 of the Pennsylvania Constitution cannot be used for any *affirmative* purpose by the government. *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971). In this case the unconstitutionally obtained statement was used in a positive way by the government. Even in *Harris*, which permitted the government to use such a statement as a shield, the court was emphatic that the *affirmative* use of such a

statement is prohibited. In *Verdugo v. United States,* 402 F. 2d 599 (9th Cir. 1968), evidence, obtained in violation of the Fourth Amendment, which was inadmissible on the issue of guilt was also inadmissible for sentencing purposes. In *Michaud v. State,* 505 P. 2d 1399 (Okl. Cr. 1973), the Oklahoma Supreme Court held that evidence obtained in violation of the Fourth Amendment could not be used in a probation revocation. The Court stated that the evidence was not admissible no matter what kind of proceeding is involved. In the Kates appeal the Order of the lower court revoking probation should be reversed.

In the appeal of Cleo McClellan, another unfairness, of the practice condoned by the majority, becomes apparent. The defendant while on probation for an eight-year period, allegedly committed the crime of assault and battery *and* the crime of assault and battery with intent to rape. After a probation hearing and while the defendant was still presumed innocent, his probation was revoked and a sentence imposed of three to ten years' imprisonment. Subsequently in the criminal trial, the defendant was *acquitted* of the higher offense of assault with intent to rape, although he was convicted of the lesser crime of assault and battery. Can it be said that the imposition of the prison term of three to ten years was not imposed in part because of a finding of *guilt* at the *probation trial* even though the defendant was subsequently acquitted of the crime of assault and battery with intent to rape? The unfairness is obvious. In the McClellan appeal the order revoking probation should be reversed and the matter remanded for reconsideration in light of the appellant's acquittal of the more serious charge.

In the appeal of James E. Allen, the writ of prohibition should be granted. The court should be pro-

130

hibited from conducting a probation revocation hearing, based on the appellants alleged commission of a crime, until the appellant's criminal proceeding is completed.