J-A17028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CALL | : | |
| | : | |
| Appellant | : | No. 3453 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003669-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CALL | : | |
| | : | |
| Appellant | : | No. 3454 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001941-2015

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 26, 2019**

Appellant, Daniel Call, appeals from the judgment of sentence entered on November 5, 2018, following the revocation of his probation.  We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Appellant] was arrested and charged with retail theft as a [f]elony of the third[-]degree on each of the above-listed [trial court] dockets.  After sentencing, while on probation, [Appellant] was

charged with the purchase and possession of narcotics in Philadelphia in violation of his probation[,] among other violations, and brought to a violation of probation hearing. [Appellant] waived his **Gagnon I** hearing and proceeded to a contested **Gagnon II** hearing.[1]

The Commonwealth presented evidence that [Appellant] had signed a copy of the [r]ules and [c]onditions governing [p]robation and [p]arole. Then, Officer Joseph McCauley testified as a member of the Narcotics Strike Force of the Philadelphia Police Department with 22 years of experience. On December 2, 2017, Officer McCauley was conducting surveillance at Jasper and Hart Lane in Philadelphia where he observed an individual identified as Mr. Cooks engage in a conversation with a female, accept [United States][c]urrency, reach into his front pants pocket, retrieve items, and hand them to the female. [Next,] Mr. Cooks went into [a] lot [on] East Hart Lane, took items from a black bag, and placed those items into his front pants area. [Appellant] then approached Mr. Cooks, engaged in a brief conversation, [Appellant] gave United States [c]urrency to Mr. Cooks, and [Appellant] received an item or items from Mr. Cooks' front pants area. [Appellant] left the area, and was arrested.

Officer McCauley observed 70 packages recovered from the lot Mr. Cooks entered, and the same items recovered from Mr. Cooks, all with the same [depiction of] Dracula [on the] packaging. Some of the packages with the Dracula stamp were tested and contained acetyl fentanyl. [In an order entered on November 5, 2018, the

---

[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973); **see also Commonwealth v. Moriarty**, 180 A.3d 1279, 1282 n.2 (Pa. Super. 2018) (citation omitted) (explaining that when a probationer is detained pending a revocation hearing, due process requires a probable cause determination at a pre-revocation hearing (**Gagnon I** hearing) to believe a violation was committed; upon a finding of probable cause, a second, more comprehensive hearing (**Gagnon II** hearing) follows before the court makes a final revocation decision). "Where the court holds a revocation hearing, based on new criminal charges, before the defendant's trial on the new charges, the proceeding is commonly known as a "**Daisey–Kates** hearing." **Id.** at n.3, *citing* **Commonwealth v. Kates**, 305 A.2d 701 (Pa. 1973). Here, the parties and trial court refer to Appellant's revocation hearing as a **Gagnon II** hearing. For ease of discussion, we use that terminology as well.

trial c]ourt found [Appellant] in violation of his probation due to his possession and purchase of narcotics. On Docket 3669-14, [Appellant's] probation and parole [were] revoked, and [Appellant] was sentenced to serve the balance of his sentence, 12 months [and] 29 days, in county prison, to be eligible for re-parole after time-served. On Docket 1941-15, [Appellant's] probation and parole [were] revoked and [Appellant] was remanded to serve the balance of his sentence, 12 months [and] 29 days, eligible for re-parole after serving time-served. No further probation was imposed.

Trial Court Opinion, 12/24/2018, at 1-2. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

Did the trial court commit an error of law when it relied on hearsay evidence when making its [] decision [to revoke Appellant's probation], thus requiring a new hearing?

Appellant's Brief at 2.

Appellant argues that "[b]ecause Officer McCauley never witnessed [Appellant] being stopped or any items from his person being seized," the trial court erred by relying upon inadmissible hearsay testimony from Officer McCauley regarding "things that happened outside of this presence[.]" *Id.* at 18 and 16. Specifically, Appellant argues:

Officer McCauley's testimony comprised the entirety of the Commonwealth's evidence. There was no admission by [Appellant] that he violated his probation. The only competent evidence here is that [Appellant] paid another man for an unseen item and other people also paid the same man for unseen items. That information might be enough for probable cause to search, but it is not evidence by a preponderance of the evidence that

---

[2] Appellant filed a timely notice of appeal on November 29, 2018. Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on December 17, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 24, 2018.

[Appellant] possessed drugs. If the trial court did not know – through the repeated attempts by the prosecutor to elicit improper hearsay testimony – that [Appellant] was allegedly later found with drugs, there is no way the trial court would have found that [Appellant] violated his parole. [Appellant] could have been buying **anything** from Mr. Cooks.

*Id.* at 20-21 (emphasis in original). Appellant contends that the error was not harmless and he is entitled to a new hearing. *Id.* at 21.

"[I]n an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." *Commonwealth v. Wright*, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted).

This Court has previously determined:

Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation. The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated. A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

*Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014) (cleaned up).

On review of a claim that the evidence was insufficient to support a revocation, we view all the evidence and reasonable inferences in the light most favorable to the Commonwealth and we do not reweigh the evidence or make credibility determinations because such determinations were for the revocation court. *See Commonwealth v. Perreault*, 930 A.2d 553, 558 (Pa. Super. 2007).

"The threat of revocation may be executed on the basis of an arrest **and evidence of some facts in addition**." *Commonwealth v. Moriarty*, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation omitted) (emphasis in original). "[W]hen the basis for revocation arises from the advent of intervening criminal conduct, a [revocation] hearing may be held prior to any trial arising from such criminal conduct." *Id.* at 1287. Moreover, even if a defendant is later acquitted of the underlying criminal charges, "factual support of the earlier revocation of probation is not necessarily removed, and the revocation may still stand." *Commonwealth v. Tomczak*, 381 A.2d 140, 142 (Pa. Super. 1977).

Hearsay is not admissible at a violation of probation hearing absent a finding of good cause for not allowing confrontation*. See Commonwealth v. Allshouse*, 969 A.2d 1236, 1241 (Pa. Super. 2009) (citation omitted). The admission of hearsay evidence at a revocation of probation hearing is harmless where there is other admissible evidence that a defendant willfully

violated the terms of probation. ***Compare id.*** at 1241-1242 (where parolee was accused of violating no-contact order with female victim, letter from victim's mother and police report concerning altercation between victim and defendant were inadmissible hearsay absent finding of good cause for not allowing confrontation; error was not harmless, because without hearsay, there was no admissible evidence that defendant willfully violated no-contact order).

Here, the revocation court determined:

[T]he evidence showed that Mr. Cooks was engaged in the sale of illegal narcotics. He engaged in multiple hand to hand transactions where he exchanged items from his front pants pocket area for United States [c]urrency. Officer McCauley observed that the items in the front pants pocket area came from a black bag in a nearby lot.

\* \* \*

[Appellant] received items from Mr. Cooks front pants pocket area that Mr. Cooks took out of the black bag in the lot. [Appellant] paid United States currency for those items in an exchange a seasoned Narcotics Strike officer believed was an illegal drug sale. That evidence, viewed in the light most favorable to the Commonwealth, by a preponderance of the evidence, shows that [Appellant] violated the condition while on probation or parole that he not engage in the illegal possession or sale of illegal drugs. Further, [Appellant's] actions in engaging in that conduct while on probation or parole shows that probation has been ineffective in rehabilitating [Appellant] and deterring antisocial behavior. Thus, the Commonwealth met its burden of proof that [Appellant] violated the terms of his probation or parole.

Trial Court Opinion, 12/24/2018, at 4-5.

In this case, Officer Joseph McCauley of the Philadelphia Police Department testified at the revocation of probation hearing. N.T., 11/5/2018,

at 21-38. Officer McCauley is a member of the Narcotics Strike Force and has 22 years of experience as a police officer. *Id.* at 21-22. His job is to conduct "open-air drug sale" surveillance. *Id.* at 22. He set up surveillance at the corner of Jasper Street and Hart Lane, on the day in question, where he "conducted numerous surveillances on that block and in that area." *Id.* at 23. Officer McCauley witnessed an unknown female and a man, later identified as Mr. Cooks, conduct a hand-to-hand transaction. *Id.* at 23. Mr. Cooks handed items to the female, taken from inside his pants, in exchange for United States currency. *Id.* at 24. Afterwards, Mr. Cooks took items from a black bag from a lot on Hart Lane and put them inside the front of his pants. *Id.* Officer McCauley testified that he believed that the black bag was "a stash location" for narcotics and that he witnessed a drug transaction. *Id.* Officer McCauley then witnessed Appellant engage in an identical hand-to-hand transaction with Mr. Cooks. *Id.* at 24-25. Officer McCauley subsequently identified Appellant, arrested him, and took him to the police station. *Id.* at 26-27, 31, and 37-38.

Upon review, Appellant is correct that Officer McCauley did not witness the actual recovery of drugs from Appellant, Mr. Cooks, and/or the black "stash" bag and that said evidence constituted hearsay. Nevertheless, Officer McCauley made several direct observations as an experienced police officer and seasoned member of the Narcotics Strike Force. Officer McCauley testified that he believed that Mr. Cooks sold narcotics to Appellant based upon the interactions he personally witnessed between Mr. Cooks and Appellant, as well between Mr. Cooks and an unknown female. In light of Appellant's subsequent

arrest, taken together with the aforementioned competent and compelling evidence of the surrounding circumstances, we reject Appellant's argument that he could have been buying "anything" from Mr. Cooks. In sum, the revocation court relied upon Officer McCauley's testimony, including the uncontroverted recitation of his direct observations in determining that the Commonwealth proved, by a preponderance of the evidence,[3] that Appellant violated the terms of his probation by purchasing drugs[4] and that probation proved ineffective as a means of rehabilitation in this case. As such, Appellant's sole appellate issue lacks merit.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/26/19

---

[3] There was sufficient probative value in Officer McCauley's direct observations to show that it was more probable than not that Appellant was engaged in the process of purchasing narcotics while on probation. This is all that the Commonwealth needed to prove.

[4] There is no dispute that Appellant was aware that possession and use of narcotics was a violation of the terms and conditions of his probation.