J-S49003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK DISTEFANO, | |
| Appellant | No. 581 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 25, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000168-2014

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS,  P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                 **FILED DECEMBER 03, 2019**

Appellant, Patrick DiStefano, appeals *nunc pro tunc* from the judgment of sentence of 6-20 years' imprisonment, followed by 7 years' probation, imposed after the trial court revoked his probation.  We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> On April 16, 2015, Appellant tendered a negotiated guilty plea to reduced charges including two counts of Person [N]ot to Possess or Control a Firearm[,] Firearms Not to be Carried Without a License[,] and Carrying a Firearm in Public in Philadelphia[,] following his apprehension for attempting to illegally transfer two … fully-loaded operable semi-automatic firearms, one of which had been reported stolen in a residential burglary.  Pursuant to the terms of a sealed Memorandum of Agreement with the District Attorney's Office[] of Philadelphia, Appellant was sentenced by

---

[*] Former Justice specially assigned to the Superior Court.

this [c]ourt on December 22, 2015[,] to concurrent terms of five … years of reporting probation on each of the five weapons offenses, to be supervised under the Drug and Alcohol Unit of the Adult Probation and Parole Department of Philadelphia.[1] Specific rehabilitative conditions were imposed including submission to random drug and alcohol screening[s], compliance with recommended drug treatment, maintained employment, and payment of fines and costs. No appeal was taken.

[O]n May 25, 2017, Appellant was arrested for physically assault[ing] his girlfriend, Michelle Weis[s]. That morning, around 8:30[ a.m.], police were called to respond to a person screaming at [a residence on] Montague Street in the City and County of Philadelphia. When uniformed Philadelphia Police Officer Richard Greger arrived on location, he observed [Ms.] Weis[s] and her son in a highly emotional state, and that the house appeared to be in "disarray" and furniture was "thrown about."

Upon arrival, Officer Greger immediately interviewed a distraught Ms. Weiss with observable scrapes to her elbow, who told him that her boyfriend, Appellant…, had been "destroying" her car earlier that morning, in search of proof that she had been unfaithful. He left her property and came back an hour later, entered Ms. Weiss'[s] house, and began throwing furniture and various objects. She reported that she had confronted [Appellant] about destroying her car and that he became enraged, dragged her down the stairs, pushed her onto the entertainment center, threw an ashtray at her, and choked her on the couch using both of his hands.

Ms. Weiss'[s] son reportedly intervened by kicking [Appellant] in the groin and … [Appellant] fled the location. Ms. Weiss told the officer that her arm and back of her head hurt from the incident. Following [Appellant's] arrest, stay away orders had been duly entered and apparently ignored because[,] between Appellant's arrest in the instant matter and his violation of probation

---

[1] We believe this is a misstatement. The trial court's sentencing order, and Appellant's brief, indicate that the trial court sentenced Appellant to an aggregate sentence of 22 years' probation for these six offenses. Sentencing order, 12/22/2015, at 2 (unnumbered); Appellant's Brief at 3.

hearing[,] Ms. Weiss and Appellant made amends and became engaged.[2]

Following [Appellant's] arrest, a petition was filed on behalf of the Commonwealth of Pennsylvania, by and through the District Attorney's Office of Philadelphia, seeking to proceed to a violation hearing pursuant to **Commonwealth v. Daisy Kates**.[4] This [c]ourt granted the Commonwealth's request to present live testimony concerning the alleged violations. Appellant's hearing was initially scheduled for June 15, 201[7], but Ms. Weiss failed to appear on that date. The violation hearing was rescheduled and held before this [c]ourt on July 25, 2017.

[4] In **Commonwealth v. Kates**, … 305 A.2d 701 ([Pa.] 1973), one of the defendants, Daisy Kates, was tried and convicted of aggravated assault and battery and a weapons offense. Kates was placed on probation for three years on the charge of aggravated assault and battery, and sentence was suspended on the weapons offense. Subsequently, Kates was arrested, and a probation revocation hearing was conducted. The hearing court concluded that based primarily on an incriminating statement attributed to Kates, Kates had committed a homicide. As a result, the hearing court revoked probation and imposed a term of imprisonment.

After imposition of sentence, a motion to suppress Kates'[s] statement was granted and Kates was eventually found not guilty of homicide. On appeal from the revocation of probation, our Supreme Court affirmed the judgment of sentence and held: "There is no statutory restriction in this [Commonwealth] that would prevent the court from holding a hearing where the alleged violation is the commission of an offense during the probationary period prior to the trial for the subsequent offense." **Id.** … at 706. In its discussion, [our] Supreme Court stated the following: "The basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration. When it

_____

[2] The record demonstrates that the Commonwealth ultimately withdrew the criminal charges against Appellant relating to the May 25, 2017 incident because Ms. Weiss failed to appear before the court. **See** N.T. Violation of Probation, 7/25/2017, at 22-23, 29-32, 44; Commonwealth's Brief at 3; Appellant's Brief at 3.

becomes apparent that the probationary order is not serving this desired end[,] the court's discretion to impose a more appropriate sanction should not be fettered. *Id.* … at 708.

During the violation hearing, [Ms.] Weiss appeared as [a] reluctant witness who recanted her report that Appellant had harmed her. However, her previous inconsistent statement that she had provided to Officer [Greger] [was] introduced wherein Ms. Weiss told the officer that Appellant dragged her, pushed her, and severely choked her with his hands around her neck. After hearing all evidence including Officer[] [Greger's] credible observations and account, this [c]ourt revoked Appellant's probation.

…

The resulting aggregate sentence imposed was a minimum period … of six … years['] state incarceration to a maximum period of twenty [years], with seven … years of reporting probation to follow the period of confinement. Appellant had been ordered to comply with rehabilitative parole conditions including random drug and alcohol testing, random home visits, [and] required attendance of twenty hours of annual anger management classes.

No [p]ost-[sentence] [m]otions or direct appeal of the [o]rder and [j]udgment of [s]entence had been filed. On [November 6, 2017], Appellant filed a *pro se* [m]otion [f]or [p]ost-[c]onviction [c]ollateral [r]elief seeking reinstatement of his direct appellate rights. This [c]ourt subsequently granted Appellant relief…[,] reinstating Appellant's direct appellate rights. [A] [n]otice of [a]ppeal was filed on February 19, 2018…. On July 30, 2018, a [Pa.R.A.P.] 1925(b) [s]tatement of [m]atters [c]omplained [of] on [a]ppeal was filed, wherein Appellant claimed that the trial court erred by finding a violation that was against the weight of the evidence and by imposing an excessive sentence.[3]

Trial Court Opinion (TCO), 12/17/2018, at 1-5 (internal citations and some footnotes omitted).

Presently, Appellant raises one issue for our review:

---

[3] Based on our review of the docket, it does not appear that the trial court ordered Appellant to file a Rule 1925(b) statement.

[W]hether the [t]rial [c]ourt's sentence, imposed after the **Daisy Kates** hearing, was excessive and not consistent with the relevant Pennsylvania law.

Appellant's Brief at 2 (footnote omitted).

Appellant challenges the discretionary aspects of his sentence. **See Commonwealth v. Ahmad**, 961 A.2d 884, 886 (Pa. Super. 2008) ("A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence.") (citation omitted). However, before reaching the merits of this issue, we must determine if Appellant has preserved it for our review. "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Id.** (citations omitted). Here, Appellant did not preserve his issue at sentencing or in a timely post-sentence motion. Accordingly, he has waived this issue.

Nevertheless, even if not waived, we would determine that the trial court did not abuse its discretion.

When reviewing sentencing matters, it is well-settled that:

> [W]e must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. An appellate court will not disturb the lower court[']s judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. Further, a sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion.

Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentence to be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. Thus, sentencing is individualized; yet, the statute is clear that the court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing.

In considering an appeal from a sentence imposed following the revocation of probation, [o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

It is the law of this Commonwealth that once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist in accordance with Section 9771(c) of the Sentencing Code:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.[C.S.] § 9771(C).

The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective

rehabilitation tool incapable of deterring probationer from future antisocial conduct. [I]t is only when it becomes apparent that the probationary order is not serving this desired end [of rehabilitation] the court's discretion to impose a more appropriate sanction should not be fettered.

*Ahmad*, 961 A.2d at 887-89 (most internal citations and quotation marks omitted; some brackets added).

Appellant argues that, in imposing his sentence, the trial court improperly considered his alleged violation of a stay-away order and the effect it had on Ms. Weiss's failing to appear for the case relating to the May 25, 2017 incident. *See* Appellant's Brief at 9. He argues that "[t]he court's obvious concern with punishing Appellant for the assault on Ms. Weiss[,] and with upholding the authority of the court in which he was tried for that assault[,] is evidence that the judgment exercised by the court was 'manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" *Id.* at 10-11 (citation omitted). We disagree.

At sentencing, the trial court provided the following reasoning for its sentence:

In my sentence I consider, number one, the generosity that was extended by the [c]ourt based upon the memorandum of agreement executed by [Appellant] and the Commonwealth back on March [17th,] and then again on April [15th] of 2015[,] and the testimony that was placed on the record … on [Appellant's] behalf. I've considered the information provided to me through the presentence report that was completed just before that sentencing hearing as well as the mental health evaluation that was completed.

On that sentence day, I am reminded how folks[,] who I have and still have the utmost regard for[,] came into this courtroom and pleaded with me on [Appellant's] behalf,…not the least of which were the agents from the Gun Violence Task Force, based upon

what transpired with that memorandum of agreement, which I will not delineate.

I consider [Appellant's] criminal history…. But for that negotiation and agreement, [Appellant] would have gone to the state for quite a few years for the underlying offense[s] for which this [c]ourt heard. Those facts of those underlying offenses I take into consideration as well.

[Appellant] was very much involved in the purchase and/or sale and transfer of weapons. One of the two weapons recovered from [Appellant's] bolted safe in his residence was [a] weapon sold to him after a residential burglary was committed. Both weapons were handguns and the safe was in his bedroom … and recovered pursuant to [a] search and seizure warrant. He admitted to his activities back in the day and took ownership and responsibility for his actions.

One of the persons that testified on [Appellant's] behalf was his previous employer. However, [Appellant's] criminal history suggested to the [c]ourt that he was going to re-offend because he indicated that he had been abusing narcotics and alcohol from a very early age and continuing with various intermittent periods of sobriety and relapses, relying heavily upon a drugstore for various types of substances. He had been in and out of various halfway houses, attended various treatment programs…. And on the date that he came in front of me for sentencing, everyone said how well and how clean and sober he was doing. His substances of abuse of choice were heroin, cocaine, pills, alcohol and methamphetamines.

His prior convictions included a conviction for receiving stolen property relative to a vehicle, possession of narcotics, [and] robbery. He was under various forms of supervision of the court. As an adult[,] he had a history of eleven arrests, six convictions, one summary conviction for retail theft, two commitments, two violation hearings and one revocation. His arrests stretched across different counties within the Commonwealth of Pennsylvania.

I do take into account the guidelines. I take into account [Appellant's] behavior that is the subject matter of the violation. His behavior and his past history indicate to this [c]ourt that [he is] a danger to the community and that [he] will re-offend if given the opportunity, and that type of offense will probably include

> violence to someone who cares about him such as the complainant, who now denies that he hurt her.
>
> [Appellant] stand[s] before me at least six [feet] tall, weighing approximately two hundred pounds, yet [he] went toe to toe with a female who is substantially smaller in every way, shape and form, all because of jealousy. Thankfully, there was police intervention in this matter. Whether it be choking someone or dragging them down the steps or punching them, striking them in the heat of anger, that presents a danger. That's a loss of control.
>
> I take into account that the other part of this violation is that he completely ignored what the [c]ourt said, which is to have no contact with the victim or the complainant. Rules don't apply. Well, here they do.

N.T. Violation of Probation at 62-66.

We would discern no abuse of discretion. While the court did mention the purported stay-away order, it was not the focus of its analysis. Instead, it emphasized the danger Appellant poses to the community, and the high risk presented that he will re-offend. In addition, it adequately considered the other relevant factors it was required to weigh. *See Ahmad*, *supra*. Accordingly, even if preserved, we would determine that Appellant's argument lacks merit. Thus, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/19