384 A.2d 1333

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James Quentin RILEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 1977.

Decided April 13, 1978.

Frederic G. Antoun, Jr., Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

. Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from the revocation of appellant's probation. Appellant raises several arguments to bolster his contentions that the hearing court lacked the power to revoke his probation and impose a prison sentence and that the court, even if it had such power, abused it by relying extensively upon hearsay evidence proffered by appellant's probation officer. While we agree with the Commonwealth that the hearing court could validly revoke appellant's probation, we agree with appellant that the court erred in relying upon hearsay evidence in exercising its power in this case. Hence, we will reverse and remand for a new hearing.

On October 25, 1973 appellant and his wife were caught by the police inside a beer distributor's store after its closing. The door to the store had been pried open and the office had been ransacked prior to the arrival of the police. Since the day's business receipts had been removed before closing, no money was stolen. However, appellant forced entry into the building and his futile search for money caused approximately $198 worth of damage.

After making restitution to the proprietor of the business,[1] appellant eventually pleaded guilty to burglary. Thereafter, on April 3, 1975, the court imposed the following punishment:

"The sentence of the court is that the defendant pay a fine of $300, the cost of prosecution and that he be placed on a period of state probation under the supervision of the

---

1. Appellant's failure to make restitution earlier had resulted in the court's rejection of the district attorney's recommendation that appellant be placed on ARD pursuant to Pa.R.Crim.P., Rules 175–85.

Pennsylvania Board of Probation and Parole for a period of three years. One of the conditions of probation is that the fine and costs that have been imposed upon him be paid within ninety days from the date hereof."

With respect to appellant's argument that the court lacked the power to revoke his probation, the critical aspects of the foregoing order are its imposition of a "fine" plus the establishment of probation. The difficulty arises because of the construction the courts have given two complementary statutes empowering the courts to grant probation to persons convicted of crimes against the Commonwealth, both of which were in effect when appellant committed the burglary in 1973. The older of the two statutes is the Act of June 19, 1911, P.L. 1055, § 1, 19 P.S. § 1051 (1964). In pertinent part that act granted the courts the power to order probation and set terms and conditions which may include "the payment of money *for the use of the county*, not exceeding, however, the fine fixed by law for conviction of [an] offense, as it may deem right and proper . . . ." [Emphasis added.] Moreover, the act concludes: "No such condition for the payment of money shall be considered a fine or a sentence nor prevent the court from thereafter sentencing any defendant under the act under which he or she was convicted, upon violation of his or her parole." The power of the courts to set probation was expanded somewhat by the Act of August 6, 1941, P.L. 861, 61 P.S. § 331.25 (1964) which eliminated the probationary bar posed by some offenses in the 1911 Act,[2] but re-emphasized that probation may only be imposed "instead of imposing . . . sentence."

The problem in construction is that a fine is a sentence which, when imposed as such, the language of the Act of 1911 notwithstanding, precludes the further imposition of probation. *Commonwealth v. Peterson*, 172 Pa.Super. 341, 94 A.2d 582 (1953). Cf. *Commonwealth v. Denson*, 157 Pa.Super. 257, 40 A.2d 895 (1945); *Commonwealth v. Ciccone*, 84 Pa.Super. 224 (1924). Hence, it should be apparent

2. For example under the Act of 1911, supra, a convicted burglar was not eligible for probation. The Act of 1941 excluded only murder in the first degree.

that Pennsylvania has been laboring under a semantic anomaly. If the sentencing court clearly imposes a fine as a sentence, it may not additionally establish probation. However, if the court establishes probation, it may require the defendant pay a sum of money equal to the legally permissible fine "to the use of the county" as a condition of probation. *Commonwealth v. Rooney*, 223 Pa.Super. 757, 299 A.2d 344 (1972). The case law and the statutes together presented an intolerable loophole whereby an inadvertent slip of the tongue could frustrate, almost entirely, the judgment of the sentencing court. Furthermore, the problem rose to a nightmare of interpretation because the mere fact that the court designated the condition of monetary payment a "fine" did not render the probation void. *Commonwealth v. Ferguson*, 201 Pa.Super. 649, 193 A.2d 657 (1943).

Presumably alert to the problem, soon after adopting the Crimes Code, the legislature removed this anachronism by adding the Act of December 30, 1974, P.L. 1052, No. 345, § 1, 18 Pa.C.S. § 1326 (Supp.1977). This act expressly grants the courts the power to impose a fine in addition to probation and call it such. By doing so, the legislature simply eliminated the necessity for the sentencing court to couch its phraseology in terms which parroted the Act of 1911; for, in substance, Section 1326 gave the court no power which it already did not possess.

Appellant argues, however, that applying Section 1326 to his case gives the statute an impermissible *ex post facto* effect, because he committed the burglary prior to the effective date of Section 1326, although Section 1326 was indisputably in effect when he was placed on probation. Regardless of whether the effect of applying Section 1326 to this case is retroactive, we are not persuaded that it is impermissible. In general, one of the following criteria must obtain before a statute, or the application thereof will be held invalid as an ex post facto law: (1) The law makes an act criminal which was not criminal when done; (2) The law aggravates a crime, or makes it greater than it was when committed; (3) The law changes a punishment, and

makes it greater than it was when the punishable act was committed; and (4) The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed, in order to convict. *Commonwealth v. Kalck*, 239 Pa. 533, 538, 87 A. 61 (1913). See also *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). Of the foregoing, it can be seen that only the third standard is arguably offended in the case at bar. However, as has been discussed above, Section 1326 did not enhance the power of the court to assess money damages in addition to probation, it simply eliminated a semantic pitfall. Hence, we do not perceive its application to the instant case as violating the prohibition against *ex post facto* laws. In short, Section 1326 did not increase the punishment which a probationer could receive, but merely expanded the terminology the court could employ in imposing that punishment. Therefore, as applied to this case, it is not an *ex post facto* law. Cf. *Commonwealth v. Kalck,* supra; *United States ex rel. Forino v. Garfinkel*, 166 F.2d 887 (3rd Cir. 1948); *Padgett v. Stein*, 406 F.Supp. 287 (M.D.Pa.1975).

Having determined that the court properly established probation and, therefore, could validly revoke it and impose a prison sentence, the question remains whether the court abused its discretion in the instant case by relying in substantial part on hearsay testimony.

At appellant's probation revocation hearing appellant was charged only with one technical violation of probation, failure to maintain employment. The sole witness for the Commonwealth was appellant's probation officer, Mary Leftridge, whose testimony began with a narrative history, not in question and answer form, of appellant's prior conduct and emotional problems. The portions of this testimony which were probative were almost entirely hearsay, having been distilled from conversations Miss Leftridge had and reports she read concerning appellant.[3] When appellant's

3. For example, Miss Leftridge testified that while appellant was an in-patient at a mental hospital he had made homosexual advances

counsel objected to this hearsay testimony, the court noted that probation revocation proceedings were less formal than a trial, and indicated that the court was not inclined to require the Commonwealth to bring in those witnesses whose firsthand knowledge of particular incidents and reports could substantiate Miss Leftridge's testimony. However, the court then asked the witness if there were a specific charge to revoke probation. Miss Leftridge responded that there was one charge, appellant's failure to remain in the employ of a company called Pennsylvania Sick Room Supply. According to Miss Leftridge appellant had reported to work for the company, but quit after one hour.[4]

Appellant subsequently took the stand and disputed much of the hearsay testimony, explained that he had worked nearly two hours at telephone solicitation for the supply company making only one dollar, and testified that he got another job immediately ·after quitting the supply company. Having received this evidence the court revoked appellant's probation directing that he be committed to the state prison

toward other patients. Appellant explained that he was not a homosexual and that the so-called "advances" were simply horseplay.

Miss Leftridge also testified that appellant had lost his job at a taxi-cab company for lying and misuse of his cab. Appellant explained that he had not lied to anyone, but misused his cab by driving to a mental health interview which Miss Leftridge ordered him to attend despite the fact she knew appellant was supposed to be working.

Miss Leftridge also testified that appellant's wife had ordered him to leave home because he threatened her, and suggested that appellant had used a friend's car without her permission.

Obviously, all of the foregoing was hearsay and, as will be shown below, was persuasive in the court's decision to revoke appellant's probation.

4. Actually Miss Leftridge's testimony concerning appellant's quitting the job was also hearsay. Firsthand she only knew that appellant had secured the position with the company, and that he was not working there when she dropped by to investigate. The rest of her information was based upon a conversation she had with appellant's erstwhile employer. However, appellant did not object to this testimony. See *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

where he should report forthwith to the diagnostic and classification center.[5]

■ The Commonwealth agrees with appellant that probation revocation proceedings entail the right to confront and cross-examine accusers. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973). Instead, the Commonwealth argues that with respect to the violation relied upon by the Commonwealth to revoke probation, appellant's leaving the employ of the Pennsylvania Sick Room Supply Co., no hearsay evidence was introduced. We find this argument to be misleading.[6]

■ First, we find it extremely unlikely that the court would have revoked appellant's probation solely on the basis of this one technical violation, especially in the light of appellant's undisputedly prompt and successful attempt to remedy his unemployment. Indeed, we feel that such a brief hiatus from employment would not be sufficient to convince a court that probation has not been "an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti-social conduct." *Commonwealth v. Kates,* 452 Pa. at 115, 305 A.2d at 708; *Commonwealth v. Davis,* 234 Pa.Super. 31, 41, 336 A.2d 616 (1975). However, we need not determine whether the court would have abused its discretion if it had relied only on the cited violation in revoking probation, because the court clearly relied on the inadmissible hearsay in determining that probation should be revoked. In announcing its decision on this matter, the court stated that it "was satisfied that there had been sufficient *violations* of a technical nature to support the request for a revocation of parole. . . ." [Emphasis added.] In light of the foregoing we find that the revoca-

5. On previous occasions when appellant was incarcerated in jail in connection with this burglary he attempted suicide twice.

6. In fact, much of this testimony was hearsay also. See note 3, supra.

tion of appellant's parole rested in large part on hearsay and may not be sustained.

Judgment of sentence is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

JACOBS, President Judge, concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.