411 A.2d 783

**COMMONWEALTH of Pennsylvania**

v.

**William MAYE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Oct. 12, 1979.

Leonard N. Sosnov, John W. Packel, Assistant Public Defenders, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

The instant appeal is before us from the decision of the Philadelphia County Court of Common Pleas revoking appellant's probation and sentencing him to a term of imprisonment of from two and one-half (2½) to five (5) years. Appellant now urges that the revocation was improperly predicated on vague and inconclusive hearsay testimony presented at the hearing. We agree and consequently vacate and remand for a new hearing.

The salient facts are as follows. On January 29, 1976, appellant pleaded guilty to a charge of theft by unlawful taking or disposition (18 Pa.C.S. § 3921), and was sentenced to three years probation conditioned on his undergoing psychiatric evaluation and accepting any drug addiction therapy recommended by the Philadelphia County Probation Department. Upon appellant's February 3, 1977 conviction for simple assault in the Municipal Court of Philadelphia, he was determined to be in violation of his probation. Nonetheless, probation was continued with the proviso that appellant enter Coatesville Hospital and remain there until medically discharged. He was indeed subsequently discharged, but for disciplinary reasons, and hearings were again held to determine whether probation remained an efficacious form of rehabilitation. The court found in the affirmative, and once more continued probation on the condition that appellant re-enter Coatesville. Appellant was shortly thereafter removed from the hospital because of alleged violations of his treatment contract.

A third revocation of probation hearing, and the one instantly under scrutiny, was held on October 12, 1977. At

that time, Probation Officer Kevin Reynolds testified that he had telephoned Coatesville and,

> "spoke with the staff . . . . It was learned that Mr. Maye had violated his treatment agreement and was forced to leave the hospital. This information was obtained through Dr. Taylor who was Mr. Maye's doctor at Coatesville and Tony Russio who is their legal advisor. At that time they informed me he had unauthorized absences twice and had violated the treatment contract. Any specifics as to the exact violation of the treatment contract would have required a Federal subpoena according to Mr. Russio.
>
> .  .  .  .  .
>
> Originally I contacted Dr. Taylor who was the assigned doctor for Mr. Maye. At that time he informed me that he was—he had been uncooperative with treatment, and on two occasions had been granted passes and did not return within the allotted time. On both of them he was granted passes until that evening and returned either the following day or the day after. He said he was not cooperative with treatment." (N.T. 3–4, 13–14).

Officer Reynolds stated that he verified this information by a second call to Doctor Taylor, who confirmed the prior conversation and who further noted that appellant received a regular discharge. The officer admitted, however, that he was acquainted with neither Dr. Taylor nor Mr. Russio, and could not testify that the individuals he spoke with were indeed who they claimed. No staff members from Coatesville were called as witnesses at the hearing, and no documentation was produced from the Hospital substantiating the exact nature of the alleged violations.[1] Appellant's

---

1. The Act of July 9, 1976, P.L. 817, No. 143, § 111, 50 P.S. § 7111, provides in pertinent part:

    "All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
    (1) those engaged in providing treatment for the person;
    (2) the county administrator, pursuant to section 110;

counsel raised a timely objection to the hearsay nature of the testimony which was overruled.

A parole revocation hearing is not a formal procedure that must be conducted in strict accordance with the entire gamut of evidentiary and procedural rules necessary in a criminal trial. *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *Commonwealth v. Rossetti,* 255 Pa.Super. 524, 388 A.2d 1090 (1978); *Commonwealth v. Tomczak,* 252 Pa.Super. 114, 381 A.2d 140 (1977); *Commonwealth v. Quinlan,* 251 Pa.Super. 428, 380 A.2d 854 (1977). Nonetheless such a hearing must comport with certain minimum due process standards enunciated by the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Among these requirements is the "right [of the probationer] to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); . . . ." *Id.* at 489, 92 S.Ct. at 2604. We have noted the necessity for this type of confrontation on several previous occasions. *See Commonwealth v. Rossetti, supra; Commonwealth v. Riley,* 253 Pa.Super. 260, 384 A.2d 1333 (1978); *Commonwealth v. Ball,* 235 Pa.Super. 581, 344 A.2d 675 (1975); *Commonwealth v. Davis,* 234 Pa.Super. 31, 336 A.2d 616 (1975).

In *Commonwealth v. Davis, supra,* a state parole agent supplied the whole of the Commonwealth's evidence at a single revocation hearing.[2] He testified as to the defend-

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent." (footnote omitted)

Appellant refused to allow release of the documents which presumably would have included information on the exact nature of the actions leading to his discharge. No further steps were taken to procure this information from other sources.

2. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that a two-step procedure was required before probation may be revoked: "[A] parolee is entitled to

ant's arrest for the theft which precipitated the hearing, his AWOL status from the army, and his prior convictions and sentencing. An objection as to the hearsay nature of this testimony was overruled, and the defendant later took the stand and purported to justify his AWOL status while asserting his innocence.

In reversing the lower court's revocation of probation, we held that the hearing did represent a *Gagnon* I hearing, for the testimony gave the court probable cause to find that the defendant had violated his probation, but that it did not represent a *Gagnon* II hearing because the judge failed to specifically find good cause for not allowing confrontation.

More recently, in *Commonwealth v. Riley, supra,* the defendant was charged with a technical violation of his parole, to wit, failure to maintain employment. The sole witness for the Commonwealth was the defendant's probation officer. The probative portion of the officer's testimony concerning the defendant's prior conduct was almost entirely hearsay, being compiled from various reports and conversations. The defendant later explained that he did indeed quit one job, but immediately assumed a position with another employer. Nevertheless, the court revoked probation and we subsequently reversed because the decision was based predominantly on inadmissible hearsay and the absence of a record justification for the lack of confrontation.

Instantly, an identical situation prevails. Although appellant here did not take the stand to refute the hearsay testimony, as was done in *Riley* and *Davis,* this does not diminish his right to confrontation. *See Commonwealth v. Ball, supra.* Nor is it determinative that appellant refused to grant permission for his files to be inspected. This was his statutory right, and in the event he chose to exercise it, the Commonwealth was nevertheless required to confront

two hearings, one a preliminary [*Gagnon* I] hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive [*Gagnon* II] hearing prior to the making of a final revocation decision." *Id.* at 781–82, 93 S.Ct. at 1759.

412

him with the pertinent information, *viz.* the testimony that would presumably have been supplied by certain members of the Coatesville staff. Thus, because the court did in fact rely on this hearsay testimony, and because it did not specifically find good cause for not allowing confrontation, the hearing could not constitute a *Gagnon* II hearing. As in *Davis*, however, we agree that the hearing did constitute a *Gagnon* I hearing because sufficient evidence was adduced to provide probable cause that a probation violation had been committed.

The judgment of sentence is vacated and the case is remanded for proceedings consistent with this opinion.