419 A.2d 780

**COMMONWEALTH of Pennsylvania**

v.

**Vincent A. DEL CONTE, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1979.

Filed May 16, 1980.

John A. DiCicco, Assistant Public Defender, Norristown, for appellant.

William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SPAETH, Judge:

This is an appeal from an order revoking parole.

In February 1978, appellant pleaded guilty to corruption of minors.[1] He was sentenced to imprisonment for not less than time served nor more than one year, and was immediately paroled. One condition of his parole was that within eight months he pay the costs of his prosecution.

■ While on parole, appellant was charged with burglary, attempted theft, criminal trespass, and conspiracy. At a preliminary hearing on these charges, the Commonwealth established a prima facie case. On October 17, 1978, at a *Gagnon II* hearing,[2] appellant was found in violation of his

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester, County, are sitting by designation.

1. 18 Pa.C.S.A. § 3125, now repealed.

2. When the probation or parole violation is based on the commission of a crime, a preliminary hearing may substitute for a *Gagnon I* hearing. *Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379 (1977); *Commonwealth v. Parker*, 244 Pa.Super. 113, 366 A.2d 941 (1976).

parole, parole was revoked, and he was remanded to the county prison to serve the remainder of his maximum sentence for corruption of minors.

1

In a revocation hearing the standard of proof is a preponderance of the evidence, *United States v. Iannece*, 405 F.Supp. 599 (E.D.Pa.1975); *Commonwealth v. Lipton*, 238 Pa.Super. 124, 352 A.2d 521 (1975), or in other words, such proof as leads the trier of fact to find that the existence of a contested fact is more probable than its non–existence. Here, the contested fact is whether appellant, while on parole, participated in a burglary, attempted theft, criminal trespass, and conspiracy.

The Commonwealth's evidence consisted entirely of the testimony of Betty Lou Medunic. She testified that appellant entered her father's house without her consent and took her pocketbook. (N.T. 12) However, she further testified that John Sweeney had also entered the house that evening, and that it was Sweeney rather than appellant who she later telephoned, because she "wanted to give him [Sweeney] a chance to give it back . . ." (N.T. 17)

Sweeney himself testified that he alone had removed the pocketbook without appellant's knowledge or consent. Thus:

Q: Did you, Mr. Sweeney, take that pocketbook that evening?

A: Yes, I did.

(N.T. 33)

Later:

Q: Mr. Sweeney, was [appellant] with you when you took that pocketbook?

A: No, he wasn't.

Q: Did you ever discuss taking that pocketbook with him?

A: No.

(N.T. 34)

Still later:

> Q: Did you have occasion to know whether [appellant] even knew you had that pocketbook. Did you show it to him at all?
>
> A: No.

(N.T. 34)

The other witnesses provided corroborative evidence that it was Sweeney and not appellant who had committed the crimes incident to taking Ms. Medunic's pocketbook. Daniel Stephenson testified that on the evening in question there was a party at Ms. Medunic's house and that Ms. Medunic was inebriated; that Sweeney left the house with the pocketbook; and that Sweeney took the pocketbook as a gag. (N.T. 39–40) Jeffrey DeGroot testified that Sweeney told him that he had taken the pocketbook from the house. (N.T. 44)

Given Ms. Medunic's inherently inconsistent testimony, and the testimony of Sweeney (whose confession resulted in the subsequent *nolle pros* of the charges against appellant), Stephenson, and DeGroot, we find that the Commonwealth failed to prove by a preponderance of the evidence that appellant had violated the terms of his parole by participation in criminal activity. *Commonwealth v. Rossetti*, 255 Pa.Super. 524, 388 A.2d 1090 (1978).

## 2

The lower court also found appellant to have been in technical violation of his parole for failure to report and pay costs.

Whether probation or parole may be revoked for less than wilful conduct is an open question. *Commonwealth v. Holm*, 233 Pa.Super. 281, 335 A.2d 713 (1975); *Commonwealth v. Rooney*, 233 Pa.Super. 225, 335 A.2d 710 (1975). In *Commonwealth v. Riley*, 253 Pa.Super. 260, 384 A.2d 1333 (1978), in reversing a revocation order predicted mostly on inadmissible hearsay, we noted that the defendant's technical viola-

tion, in the form of a brief period of unemployment, "would not be sufficient to convince a court that probation has not been an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti–social conduct." *Id.*, 253 Pa.Super. at 267, 384 A.2d at 1337, *quoting Commonwealth v. Kates*, 452 Pa. 102, 115, 305 A.2d 701, 708 (1973). In the course of our opinion, we looked at the circumstances behind the defendant's technical violation, and acknowledged his "undisputedly prompt and successful attempt to remedy his unemployment." 253 Pa.Super. at 267, 384 A.2d at 1337.

In recent cases in which we have affirmed revocation for technical violations, we have found clear evidence of wilful disobedience. Thus in *Commonwealth v. Holm, supra,* we referred to the lower court's finding that the defendant was a "well–educated and well–spoken man who doubtless could have found the wherewithal to meet his obligations had he so desired." 233 Pa.Super. at 287, 335 A.2d at 717. In *Commonwealth v. Rooney, supra,* we cited the lower court's statement that it

> simply did not believe [the defendant] and was convinced that his protestations of poverty were not made in good faith. . . . At the 1974 hearing, his entire appeal was an allegation of uncorroborated indigency, a protestation which did not ring true.

> 233 Pa.Super. 230–31, 335 A.2d at 713.

In *Commonwealth v. Tomczak*, 252 Pa.Super. 114, 381 A.2d 140 (1977) *reh. denied,* (1978), the record showed that the defendant had been convicted of similar offenses three times after probation, had directly violated a probation order prohibiting his consumption of alcohol, and had compounded his wilful disobedience by stealing two bottles of liquor from a bar.

Here, appellant has manifested no such wilful or flagrant disrespect as has convinced us in other cases to affirm a revocation order. Appellant violated his parole by failing to pay prosecution costs of $70.14 and by not submitting monthly reports for June, July, and August, 1978. These

violations, however, must be appraised in light of the following evidence. Appellant testified that after being placed on parole, he voluntarily commenced hospital treatment for what he termed an alcohol problem and "my nerves." During the three months for which he failed to submit reports, appellant was at Northwestern Institute of Psychiatry, Valley Forge Medical Center, and the Cope Center. Appellant testified that his mother had informed Assistant Adult Probation Officer Robert T. Gaskill that appellant was hospitalized and unable to report as required. Further, appellant testified that his mother had told him that the report forms had not been sent to his home when he was in the hospital. (N.T. 30) Appellant also testified that his only income was $86.50 per month of public assistance. (N.T. 29–30)

■ As stated in *Commonwealth v. Kates, supra,* the purpose of probation is "to provide a means to achieve rehabilitation without resorting to incarceration." 452 Pa. at 115, 305 A.2d at 708. The purpose of parole is similar. In deciding to impose a probation order, or in granting immediate parole, as was done here, the court balances the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. 18 Pa.C.S. § 1322; *see Commonwealth v. Wicks,* 265 Pa.Super. 305, 401 A.2d 1223, 1225–26 (1979). "When it becomes apparent that the probationary order is not serving this desired end [of rehabilitation] the court's discretion to impose a more appropriate sanction should not be fettered." *Commonwealth v. Kates, supra,* 452 Pa. at 115, 305 A.2d at 708. Here, the evidence was insufficient to support a finding that the order placing appellant on parole had ceased to serve its original purpose of attempting to achieve appellant's rehabilitation outside of prison. As discussed in the first part of this opinion, the evidence did not show that appellant engaged in criminal activity after the conviction for which he was put on parole. In addition, the evidence affirmatively showed that appellant had actively undertaken rehabilitation measures, by voluntarily participating in hospital programs to treat his

alcoholism and nervous problems. In fact it was his involvement with these programs that led to his technical violations, since he did not earn a wage or report while undergoing treatment. Assuming, without deciding, that probation or parole may be revoked for technical violations that represent less than wilful conduct, on the evidence here, parole should not have been revoked.

The order revoking parole is reversed, and the case is remanded with instructions to reinstate the original order of parole.