**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 21 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on January 3, 2018 at |
| | : | No. 3572 EDA 2016 affirming the |
| v. | : | Judgment of Sentence entered on |
| | : | October 27, 2016 in the Court of |
| | : | Common Pleas, Philadelphia County, |
| DARNELL FOSTER, | : | Criminal Division at No. CP-51-CR- |
| | : | 0005272-2015 |
| Appellant | : | |
| | : | ARGUED: March 5, 2019 |

**OPINION**

JUSTICE DONOHUE                    DECIDED: August 20, 2019

The issue presented in this case asks for a determination of what constitutes a permissible basis for a court to find an individual in violation of probation ("VOP"). The pertinent language of the relevant statutes requires that orders of probation include "specific conditions" to help the defendant to achieve the general condition of leading a "law-abiding life," and a finding that a defendant violated a "specified condition of the probation" to support its revocation. *See* 42 Pa.C.S. §§ 9754(b)-(c), 9771(c). Based on our canons of statutory construction, we conclude that the VOP court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime to be found in violation. Absent such evidence, a violation of probation does not occur solely because a judge believes the probationer's

conduct indicates that probation has been ineffective to rehabilitate or to deter against antisocial conduct. We therefore reverse the decision of the Superior Court, vacate the order of the VOP court and remand the case for proceedings consistent with this Opinion.

On July 7, 2015, Appellant Darnell Foster entered a negotiated guilty plea to charges of possession of and possession with intent to deliver a controlled substance.[1] The trial court sentenced him to four years of probation. On August 3, 2016, Foster's probation officer detained him because of several photographs he posted on his social media accounts in the preceding three months. The photographs depicted guns, drugs, large amounts of money and his sentencing sheet from his plea agreement, along with captions that he posted with some of the pictures.[2]

The common pleas court held two hearings on the alleged violation of probation in August and October.[3] It was the Commonwealth's position that the items in the photographs were contraband that belonged to Foster and that he took the pictures. The Commonwealth claimed, without any corroborating evidence, that a black hand in a photograph that was holding a bag of marijuana necessarily belonged to Foster and that

---

[1] Act of July 9, 2013, P.L. 359, No. 53, § 2, 35 P.S. § 780-113(a)(16), (30).

[2] For example, Foster posted "count it up" next to a picture of him fanning large amounts of money and "15s around" with three pill emojis next to a picture of a pile of white pills. *See* Commonwealth's Exhibit 2. Foster also posted a photograph of himself in an ankle monitor fanning large amounts of money, but at the VOP hearing, the Commonwealth conceded that Foster had posted the picture the week before he entered his guilty plea in 2015, and that this photograph was not taken or posted during his probation. *See* N.T., 10/27/2016, at 5.

[3] Pursuant to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), a probationer is entitled to two hearings when a violation of probation is alleged: a preliminary hearing at the time of arrest and detention to discern whether the alleged violation is supported by probable cause, and a second, more comprehensive hearing prior to the court rendering a final revocation decision. *Id.* at 782.

a gun depicted in a different photograph belonged to Foster, constituting the commission of crimes. N.T., 10/27/2016, at 19, 20; *see* 18 Pa.C.S. § 6105(a) (defining persons not to possess firearms). The Commonwealth contended that Foster was using his social media accounts "as an ad agency … to sell the drugs" and that this evinced that he "continue[d] to do exactly what he's been doing." *Id.* at 10, 18. According to the Commonwealth, the photographs reflected "the kind of respect that he has for [the court] and the rules that [the court has] and the rules that probation has for him." *Id.* at 11. It asserted that there was "absolutely no evidence to show that the photos were taken by anyone other than [Foster]" and "that there is clearly enough evidence to show that [Foster] is in violation of his supervision."[4] *Id.* at 9, 11. The Commonwealth requested that Foster be resentenced to a period of incarceration and be prohibited from using social media for the duration of his court supervision. *Id.* at 11. Other than the photographs in question, the Commonwealth presented no evidence at either VOP hearing in support of its contentions. At no time did the Commonwealth mention the conditions of Foster's current probation, present a document detailing the conditions, or suggest that his conduct violated a specific condition of his probation.

Foster, through counsel, admitted that the social media accounts were his and that he had posted the photographs in question, but asserted that he downloaded all of the pictures (other than those depicting his sentencing sheet and him with money) from the internet. Counsel argued that although Foster should not have downloaded and posted pictures that reflect criminal activity or a criminal lifestyle, it was not a crime or a violation

---

[4] "In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence." *Commonwealth v. Brown*, 469 A.2d 1371, 1373 n.2 (Pa. 1983).

of his probation to do so. Counsel recounted that Foster had been attending meetings with his probation officer, tested negative on every drug screen and had not incurred any new arrests, all of which presumably were conditions of his probation. Counsel argued that the burden was on the Commonwealth to establish that Foster had violated his probation and that it failed to carry that burden. When given the opportunity to speak for himself, Foster explained to the VOP court that he posted the photographs "to show off to people," but admitted that "[i]t was stupid." *Id.* at 25. He further stated that the photographed money was his, but that he had earned it through legal employment with a waste management company.

At the conclusion of the second proceeding, the VOP court found that Foster had violated his probation. Notably, the VOP court did not find that Foster had violated a condition of his probation – in fact, the VOP court never mentioned the conditions of his probation in reaching its decision, and no order of probation appears in the certified record on appeal.[5] Nor did the VOP court find that the items in the photographs were, in fact, contraband, that any of the items belonged to Foster, that he took the posted pictures, or that he committed a crime. Instead, the court found as follows:

> What is crystal clear from these photographs, posted by the
> defendant on his social media accounts, is that he does not

---

[5] There is no court order specifying the conditions of probation in the record and nothing in the record otherwise suggests that the sentencing court issued an order specifying the conditions of Foster's probation. The statute requires that "[t]he **court** shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b) (emphasis added). The failure to do so is a violation of this statutory mandate. While this Court has recognized that probation officers may, consistent with their statutory authority, impose specific conditions of supervision pertaining to the defendant's probation, *see* 61 Pa.C.S. §§ 6131(a)(5)(ii), 6151, any supervision conditions imposed must be "in furtherance of the trial court's conditions of probation." *Commonwealth v. Elliott*, 50 A.3d 1284, 1292 (Pa. 2012).

take probation seriously and clearly is not attempting to conform to society's expectations of its citizenry. Mr. Foster's embracement of all things 'gangsta', including illegal drugs, guns and violence, is not the reformation this court had in mind for the defendant when he was placed on probation. This defendant's conduct clearly indicates that probation was an ineffective vehicle to accomplish his rehabilitation and deter against Foster's future antisocial conduct, as he has chosen to highlight his defiance or indifference regarding his crimes, rather than any display of remorse.

VOP Court Opinion, 3/31/2017, at 5. It thus revoked his probation and resentenced him to 11½ to 23 months of incarceration, followed by seven years of probation.

Foster appealed to the Superior Court challenging, in relevant part, the revocation of his probation without finding him in violation of a specific condition of his probation as statutorily and constitutionally required. Relying on its prior decision in *Commonwealth v. Ortega*, 995 A.2d 879 (Pa. Super. 2010), which, in turn, had relied upon language from this Court's decision in *Commonwealth v. Infante*, 888 A.2d 783 (Pa. 2005), the Superior Court framed the question before it as "whether the evidence admitted at the VOP hearing established by a preponderance of the evidence that probation had proven ineffective at rehabilitating [Foster] and deterring him from antisocial behavior." *Commonwealth v. Foster*, 3572 EDA 2016, 2018 WL 267757, *3 (Pa. Super. Jan 3, 2018) (non-precedential decision).

Based on the above-quoted portion of the VOP court's opinion, the Superior Court found that the decision to find Foster in violation of his probation was neither an abuse of discretion nor an error of law. The Superior Court found it irrelevant whether the pictures were Foster's or whether he downloaded the images from the internet, as the photographs "illustrate his association of himself with contraband, a propensity for violence, and the glorification of drugs as well as show his lack of rehabilitation and his

antisocial conduct." *Id.* According to the Superior Court, the photographs "actively suggest [Foster]'s continued involvement with these items." *Id.*

The Superior Court cited this Court's decision in *Infante* for the proposition that "[a] probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Foster*, 2018 WL 267757, at *3 (quoting *Infante*, 888 A.2d at 791). The Superior Court pointed to the photograph Foster posted of his negotiated guilty plea, which included the caption, "Couldn[']t beat the case 4 years['] probation," categorizing this as an "expression of remorse not for engaging in the sale of illegal drugs which led to that plea but, rather, at his inability to avoid prosecution." *Id.* at *4. It found that this constituted clear evidence that "being on probation had not sufficiently rehabilitated [Foster] or deterred him from engaging in antisocial conduct." *Id.*[6]

Foster filed a petition for allowance of appeal, which this Court granted to address the following question:

> Did not the Superior Court err by ignoring the governing statute and due process protections that permit revocation only for a violation of specified conditions of probation, and by holding that [Foster's] inappropriate offensive social media posting, that violated no condition of probation, warranted revocation?

*Commonwealth v. Foster*, 187 A.3d 913 (Pa. 2018) (per curiam).

---

[6] The Superior Court also observed that when he addressed the VOP court, Foster never specifically denied that he was in the photographs, only that the items in the photographs were not his. While suggesting that this could constitute a VOP, as a probationer is prohibited from possessing contraband, it did not find that Foster violated his probation on this basis. *Foster*, 2018 WL 267757, at *3 (citing *Commonwealth v. Parker*, 152 A.3d 309, 318 (Pa. Super. 2016)). Likewise, the VOP court made no such finding.

Prior to addressing the substantive issue raised, we must first determine whether this appeal continues to be properly before us for decision. On March 1, 2019, the Commonwealth filed a post-submission communication, *see* Pa.R.A.P. 2501(a), informing the Court that Foster had pled guilty on December 8, 2018 to possession of a controlled substance with intent to deliver. This resulted, on February 15, 2019, in a revocation of the sentence of probation that he was given on October 27, 2016 by the VOP court. The Commonwealth contends that because Foster has been resentenced, "there is no final sentence before this Court that could be vacated." Commonwealth's Post-Submission Communication, 3/1/2016, at 2. Although not explicit in this regard, it appears based on the totality of the motion that the Commonwealth is suggesting that the question before the Court is now moot.

Foster responded to the Commonwealth's motion, asserting that the Court should disregard the information communicated by the Commonwealth because the Court must evaluate the case based on the record at the time of the revocation in question.[7] Foster further disagrees that the case is moot as probation revocation has adverse consequences beyond the sentence received. He therefore requests that the Court decide the pending appeal.

We agree with Foster that this case is not moot. A case is moot when facts that arise after the initiation of the case leave a litigant without a stake in the outcome of the

---

[7] Relying on Pa.R.A.P. 1701(b), Foster further suggests that the common pleas court did not have jurisdiction to revoke the probation issued on October 27, 2016, as that order was on appeal at the time, and could only "maintain the status quo or rule on collateral matters." Foster's Response, 3/1/2019, at 1. However, the question of the court's jurisdiction to enter the February 15, 2019 order is not properly before this Court in this appeal.

matter. *William Penn Sch. Dist. v. Pennsylvania Dept. of Ed.*, 170 A.3d 414, 435 n.33 (Pa. 2017). As Foster correctly observes, the impact of a revocation of probation goes beyond the resentencing decision. *Johnson v. Commonwealth Bd. of Probation and Parole*, 482 A.2d 235, 236 (Pa. 1984) (per curiam) (finding parolee's challenge to violation proceeding was not moot after re-paroled because finding of violation could have "future consequences"). If the defendant is convicted of another crime or has a future revocation of probation proceeding, a past probation revocation is something that courts deciding these questions would consider in determining whether probation is an appropriate sentence. *See, e.g., Commonwealth v. Parlante*, 823 A.2d 927, 931 (Pa. Super. 2003) ("We agree with the trial court that Parlante should serve time in prison because of her prior criminal record and repeated inability to comply with the rules and requirements of her probation."). *See also* 42 Pa.C.S. §§ 9721(b) (sentencing considerations include defendant's rehabilitative needs and protection of public), 9771(c) (permissible bases for imposing sentence of total confinement upon revocation of probation include the need to vindicate the court's authority). The October 27, 2016 order revoking Foster's probation remains part of his record. The subsequent revocation of his probation in February 2019 does not render that order superfluous. We therefore proceed to consider the merits of the issue raised.

Foster asserts that the plain language of section 9771 of the Sentencing Code, 42 Pa.C.S. § 9771, which governs revocation of probation, prohibits a court from finding a probationer in violation absent proof that the defendant violated a specific condition of his or her probation or committed a new crime. By finding Foster in violation for his "offensive antisocial conduct," Foster argues that the courts below effectively rewrote the statute to

allow for revocation on some other, non-specified basis, which is prohibited by the rules of statutory construction. Foster's Brief at 9-10. Foster states that the other statute that is part of this statutory scheme includes the same, unambiguous language, requiring the same interpretation. *Id.* at 10-11; *see* 42 Pa.C.S. § 9754. In the event this Court finds section 9771 to be ambiguous, Foster contends that the courts below nonetheless erred, as the language of the statute, as a penal statute, must be "interpreted in the light most favorable to the accused." Foster's Brief at 13-14 (quoting *Commonwealth v. Booth*, 766 A.2d 843, 846 (Pa. 2001)).[8]

The Commonwealth makes only passing references to section 9771, but it asserts its disagreement with Foster's interpretation of the statutory provision.[9] Instead of reading section 9771 as permitting revocation only for a violation of a specified condition of probation, the Commonwealth states that the "focus" of the statute is on the requirement of "**proof** of a violation before a court orders revocation." Commonwealth's Brief at 17 (emphasis in original) (citing *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985), for the proposition that "the Court has recognized that a

---

[8] Foster also raises a constitutional violation, asserting that the decisions below violate his right to due process. *See* Foster's Brief at 14-17. As Foster correctly observes, however, this Court will not address questions of a constitutional dimension if the case can be resolved on a non-constitutional ground. *See Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 383 (Pa. 2018). Because we conclude that this case is resolved through our rules of statutory construction, we need not address Foster's due process claim.

[9] The Commonwealth devotes the majority of its brief to its due process argument, which we discuss below. Notably, it agrees with Foster that the VOP court violated his due process rights, stating, "The VOP court revoked probation based on a constitutionally overbroad standard – that [Foster's] use of social media proved he was not treating his sentence 'seriously' or meeting 'society's expectations'." Commonwealth's Brief at 10.

governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence").

This case presents a question of statutory interpretation, for which our scope of review is plenary and our standard of review is de novo. *Commonwealth v. Popielarcheck*, 190 A.3d 1137, 1140 (Pa. 2018). The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth the governing principles for our analysis. It provides that the goal of interpreting a statute is to discern and implement the intent of the General Assembly. *Id.* § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," and every provision of a statute is to be given effect to the extent possible. *Id.* § 1921(a)-(b); *Cagey v. Commonwealth*, 179 A.3d 458, 462-63 (Pa. 2018) ("when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we must give the statute this plain and obvious meaning") (citation omitted).

"[I]n determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). Statutes that are in pari materia – meaning that "they relate to the same person or things or to the same class of persons or things" – must be construed as one statute to the extent possible. 1 Pa.C.S. § 1932. We ascribe the "common and approved" definition to each of the words used in a statute. 1 Pa.C.S. § 1903(a). We construe "[g]eneral words" used in a statutory provision as being defined and "restricted by preceding particular words." *Id.* § 1903(b).

The present versions of our probation statutes date back to 1974. Approximately a year and a half prior to their adoption, the United States Supreme Court decided *Morrissey v. Brewer*, 408 U.S. 471 (1972). In *Morrissey*, the high Court announced the due process protections to which a person is entitled when alleged to be in violation of parole.[10] Of particular relevance to the case at bar, the *Morrissey* Court began with the following premise:

> Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole. The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of **one or more conditions of his parole**. **Only if** it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

*Id.* at 479-80 (emphasis added). The Court continued, stating that a parolee relies on the court's "implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* at 482. Thus, the Court repeated that "[t]his discretionary aspect of the revocation decision need not be reached unless there is first an appropriate determination that the individual has in fact breached the conditions of parole," referring to this as a function of "basic fairness" and "avoiding reactions to arbitrariness." *Id.* at 483-84.

In an apparent response to *Morrissey*, our General Assembly enacted sections 9754 and 9771 of the Judicial Code, which address the requirements for an order of probation and a violation of probation, respectively. *See* 42 Pa.C.S. §§ 9754, 9771.

---

[10] In *Gagnon v. Scarpelli* the United States Supreme Court extended the same protections to a probationer alleged to be in violation. *Gagnon*, 411 U.S. at 782; *see also Commonwealth v. Kates*, 305 A.2d 701, 709 n.10 (Pa. 1973) (stating the same).

Section 9754[11] provides that an order of probation must specify the length of the term thereof at the time of sentencing. *Id.* § 9754(a). Under the heading "[c]onditions

---

[11] Section 9754, titled "[o]rder of probation," states:

**(a) General rule.--**In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.

**(b) Conditions generally.--**The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.

**(c) Specific conditions.--**The court may as a condition of its order require the defendant:

(1) To meet his family responsibilities.

(2) To devote himself to a specific occupation or employment.

(2.1) To participate in a public or nonprofit community service program unless the defendant was convicted of murder, rape, aggravated assault, arson, theft by extortion, terroristic threats, robbery or kidnapping.

(3) To undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.

(4) To pursue a prescribed secular course of study or vocational training.

(5) To attend or reside in a facility established for the instruction, recreation, or residence of persons on probation.

(6) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(7) To have in his possession no firearm or other dangerous weapon unless granted written permission.

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

(9) To remain within the jurisdiction of the court and to notify the court or the probation officer of any change in his address or his employment.

(10) To report as directed to the court or the probation officer and to permit the probation officer to visit his home.

(11) To pay such fine as has been imposed.

generally," section 9754 requires the sentencing court to attach any "reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." *Id.* § 9754(b). Subsection (c), titled "[s]pecific conditions," includes the fifteen conditions of probation that are authorized for inclusion in the order. *Id.* § 9754(c). "[I]n the event of the violation of **a condition**," the statute directs that the court cannot resentence the defendant before it makes "a finding on the record that a violation has occurred." *Id.* § 9754(d) (emphasis added).

Section 9771[12] allows for termination of supervision or modification of the conditions of probation at any time. *Id.* § 9771(a). Revocation of probation, however, is

---

(12) To participate in drug or alcohol treatment programs.

(13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

(14) To remain within the premises of his residence during the hours designated by the court.

**(d) Sentence following violation of probation.--**The sentence to be imposed in the event of the violation of a condition shall not be fixed prior to a finding on the record that a violation has occurred.

42 Pa.C.S. § 9754.

[12] Section 9771, titled "[m]odification or revocation of order of probation," provides:

**(a) General rule.--**The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

**(b) Revocation.--**The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

sanctioned only "upon proof of the violation of **specified conditions** of the probation." *Id.* § 9771(b) (emphasis added). If, after finding a violation, the court revokes a defendant's probation, it may only resentence the defendant to a term of incarceration if (1) the defendant was convicted of a new crime; (2) the defendant's conduct makes it likely that he or she will commit a new crime if not incarcerated; or (3) incarceration "is essential to vindicate the authority of the court." *Id.* § 9771(c). A hearing is required before a court may revoke probation or increase the terms of a defendant's probation, "at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation." *Id.* § 9771(d).

We find the language of the pertinent statutory provisions to be clear and unambiguous. The law provides a general condition of probation – that the defendant lead "a law-abiding life," i.e., that the defendant refrain from committing another crime. *Id.* § 9754(b). To insure that general condition is met, or to assist the defendant in meeting that general condition, the order must also include certain "specific conditions" from the

---

**(c) Limitation on sentence of total confinement.--**The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

**(d) Hearing required.--**There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S. § 9771.

list enumerated in section 9754(c). Only upon the violation of any of the "specified conditions" in the probation order (general or specific) may a court revoke the defendant's probation. *Id.* § 9771(b). In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the "specific conditions" of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result.[13]

The Commonwealth advocates for the creation of an implied condition of probation: that a defendant is prohibited from "communicat[ing] an intent to commit a violent crime." Commonwealth's Brief at 12. Citing to cases from other jurisdictions, the Commonwealth asserts that other courts have recognized that the proscribed conduct for a probationer need not be included as a specified condition as long as a person has some form of notice of the prohibited conduct. *Id.* at 14 (citing *United States v. Dane*, 570 F.2d 840, 843 (9th Cir. 1977), *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994), *State v. Austin*, 685 A.2d 1076, 1083 (Vt. 1996)).

The Commonwealth makes no argument that the statutory scheme governing probation in Pennsylvania either expressly or implicitly provides a basis for finding a defendant in violation of probation for communicating an intent to commit a violent crime. The Commonwealth does not even suggest that our statutes support such a finding.

---

[13] This Court previously referred to the prohibition against committing a new crime as "an implied condition" of a sentence of probation. *Infante*, 888 A.2d at 790 (citing *Commonwealth v. Mallon*, 406 A.2d 569, 571 (Pa. Super. 1979)). The *Infante* Court made this statement without any targeted statutory analysis on this point. As stated above, section 9754(b) expressly provides that the intention of the General Assembly in permitting a court to enter an order of probation, and attach conditions thereto for the defendant to follow, is to have the defendant lead "a law-abiding life." 42 Pa.C.S. § 9754(b). It is clear and unambiguous that central to a sentence of probation is the condition that the defendant remain crime-free.

Based on our review of the relevant provisions and the advocacy presented, we decline to create a new condition of probation that has not been provided for by our General Assembly.

In its decision, the Superior Court never mentioned either section 9754 or 9771. Instead, as stated above, the court relied solely upon a statement made by this Court in *Commonwealth v. Infante*, which was reiterated in the Superior Court's prior decision of *Commonwealth v. Ortega*, that "[a] probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct" to affirm the VOP court's decision. *See Foster*, 2018 WL 267757, at *3; *Infante*, 888 A.2d at 791 (quoting *Commonwealth v. Brown*, 469 A.2d 1371 (Pa. 1983)); *see also Ortega*, 995 A.2d at 886 (referring to this standard as "the Commonwealth's burden of proof in establishing a probation violation"). Its reliance on this passage from *Infante* for its disposition of this case was error.

In *Infante*, the probationer had both violated specified terms of his probation (technical violations) and was subsequently convicted of several crimes. The passage relied upon by the Superior Court below was made by the *Infante* Court in the context of its discussion of sections 9754 and 9771, stating that probation can be revoked based on technical violations as well as following a new criminal conviction. *Infante*, 888 A.2d at 791 ("As Sections 9754 and 9771 make clear, the reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct."). The Court then went on to state the "broad standard" used by courts to assess probation violations – whether the defendant's conduct giving rise to the violation reveals that

probation has been an ineffective tool for his or her rehabilitation and insufficient to deter against future antisocial conduct – which the Superior Court below misstated as the sole basis for determining whether a defendant has violated probation. *Id.*

The statement relied on by the Superior Court cannot be read in isolation. Read in context, it is clear that the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed. Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity. *See, e.g.*, *Brown*, 469 A.2d at 1376 (holding that the Commonwealth cannot establish probation violation where defendant was acquitted of the charges that constituted the alleged VOP); *Commonwealth v. Burrell*, 441 A.2d 744, 746 (Pa. 1982) (revocation and resentencing to term of imprisonment based on conviction of new crime, judge determined that probation was not effective for defendant's rehabilitation or to deter antisocial conduct). As the statute provides (and *Infante* reflects), a court never reaches this question unless there is a violation of a specified term of the probation order or the probationer commits a new crime.[14]

In the case at bar, both the VOP court and the Superior Court disregarded the statutory requirement that a court must first find that the defendant either committed a new crime or violated a specific condition of probation in order to be found in violation.

---

[14] We expressly disapprove of the Superior Court's reliance on this passage from *Infante* in *Ortega* and its progeny for the proposition that revocation of probation is permissible in the absence of a finding that the defendant violated a specified condition of probation if the VOP court finds that probation has been ineffective to rehabilitate or to deter against antisocial conduct.

Relying on this Court's prior decision in *Commonwealth v. Mullins*, 918 A.2d 82 (Pa. 2007), the Commonwealth contends that this Court is required to remand the case to the VOP court for it "to make factual findings under a proper legal standard,"[15] and that vacating its order would be improper. Commonwealth's Brief at 11-12, 18.

We disagree that *Mullins* mandates remand of this matter for the VOP court to conduct another round of fact finding. In *Mullins*, the VOP court found the defendant in violation of his probation based on his guilty plea to a new crime while on probation. This information was presented to the VOP court through the probation officer's hearing summary sheet, which he had adopted as his testimony, but which was never made part of the record. The defendant appealed and the Superior Court vacated the judgment of sentence, finding that the record was insufficient to establish that the defendant had violated probation. *Mullins*, 918 A.2d at 83-84. This Court granted the Commonwealth's petition for allowance of appeal and reversed, agreeing with the Commonwealth's argument that "when proper evidentiary procedures are not followed in a VOP hearing, the appropriate remedy is to vacate the revocation and remand for a new VOP hearing." *Id.* at 84. We held that "the court that granted probation should not be precluded from determining whether probation remains the proper course only because the Commonwealth failed to include certain formalities in the record." *Id.* at 86.

In reaching this conclusion, the *Mullins* Court noted several Superior Court decisions in support of its decision: *Commonwealth v. Simms*, 770 A.2d 346, 353 (Pa.

---

[15] The Commonwealth subsequently withdrew its remand request in its post-submission communication to this Court based upon its belief that this appeal was moot. *See* Commonwealth's Post-Submission Communication, 3/1/2019, at 2. Since we have rejected this argument, we address the merits of the Commonwealth's remand request.

Super. 2001), wherein that court remanded the case to the VOP court because it erroneously found that the probationer's waiver of the *Gagnon I* hearing provided a sufficient basis to revoke his probation; *Commonwealth v. Homoki*, 605 A.2d 829, 831 (Pa. Super. 1992), which involved a remand by the Superior Court because the VOP court did not hold two separate hearings as required by law; and *Commonwealth v. Maye*, 411 A.2d 783, 786 (Pa. Super. 1979), wherein the Superior Court remanded the case based on a violation of the probationer's right to confrontation, as the Commonwealth established the violation through hearsay evidence alone. Notably, the *Mullins* Court also cited to *Commonwealth v. Griggs*, 461 A.2d 221, 225 (Pa. Super. 1983), which did not involve any evidentiary or procedural anomaly, but was a challenge to the sufficiency of the evidence to support a finding that the probationer was in violation. In *Griggs*, the Superior Court found the evidence was insufficient to support revocation of probation and on that basis it vacated the judgment of sentence and remanded the case to the VOP court with instructions for it to reinstate the original order of probation. *Id.*

In a concurring opinion, then-Chief Justice Cappy, joined by then-Justice (now-Chief Justice) Saylor, warned against the reading of the majority opinion that the Commonwealth in the case at bar now advances. The concurrence cautioned that the majority's opinion should not be "misconstrued as enunciating a per se rule requiring a remand to the trial court for a new VOP hearing in each instance where the VOP hearing record is insufficient to support revocation of probation." *Id.* at 87 (Cappy, C.J., concurring). The concurrence agreed, however, that under the facts of the case before the Court, remand for a new VOP hearing was the appropriate result.

Unlike *Mullins*, the case at bar does not involve a procedural anomaly or the disregard of an evidentiary formality. This case simply involves the question of whether the evidence and information presented before the VOP court supports a finding that Foster violated his probation. The **sole** evidence presented by the Commonwealth at the VOP hearing was the photographs. The photographs depicted alleged marijuana, white pills and an alleged gun, the intended implication being that Foster was in possession of contraband. The Commonwealth made extensive argument before the VOP court that the items in the photographs belonged to Foster, that he took the pictures of these items (thus possessing them), and that he thus committed a crime. *See* N.T., 10/27/2016, at 9-11, 18-20. The Commonwealth never contended that Foster violated a specific condition of his probation; in fact, it expressly concedes that he did not.[16] Commonwealth's Brief at 11.

The VOP court heard the argument and considered the evidence presented, making findings of fact based on its assessment of that evidence. As stated hereinabove, the VOP court found, based on the evidence presented, that Foster violated probation

---

[16]  The dissenting Justice's view that this case involves "a procedural anomaly or an inadvertent disregard of an evidentiary formality" warranting remand is unsupported by the record. *See* Concurring and Dissenting Op. at 2. Although the dissent is correct that the order of probation is not in the record, as stated, the Commonwealth admits that Foster did not violate any specified condition of probation by posting the pictures on social media. *See* Commonwealth's Brief at 11. It was the Commonwealth's burden to prove that Foster violated a specified condition of his probation, and the Commonwealth's admission that he did not is conclusive. The Commonwealth's sole argument for revocation was that Foster committed a crime. After consideration of the only physical evidence (the photographs) and Foster's testimony, the VOP court did not make a finding that Foster committed a crime.

Moreover, contrary to the dissent's accusation, we do not rely on the concurring opinion in *Mullins* to reach our decision that no remand is required, but distinguish *Mullins* on its facts.

because in the court's view, he was not taking his probation seriously and his behavior of posting the pictures on his social media accounts (which he admitted) was antisocial and defiant, concluding on that basis that probation was not an effective vehicle for his rehabilitation. Importantly, the VOP was specifically asked to find that Foster committed a crime, but it did not.

The Commonwealth does not seek a new evidentiary hearing, it simply advocates for the VOP court to have "an opportunity to make factual findings under [the] proper legal standard." Commonwealth's Brief at 12. As our discussion hereinabove reflects, the legal standard pursuant to which the VOP court was required to make its determination is clear, unambiguous, and has always been the law.[17] Moreover, as discussed, *Mullins* does not stand for the proposition that remand is required anytime the Commonwealth disagrees with the VOP court's findings. The failure to make the only finding of fact advanced by the Commonwealth is a clear rejection of that fact.

Given the intervening change in circumstances brought to our attention by the Commonwealth, however, we conclude that remand is nonetheless warranted, albeit on other grounds. The October 27, 2016 revocation resulted in the VOP court resentencing Foster to a period of incarceration. According to the Commonwealth, the most recent violation of probation resulted in Foster receiving a sentence of eighteen to thirty-six months of incarceration. Because we now vacate the October 27, 2016 revocation and

---

[17] We disagree with the dissenting Justice that, based on *Ortega,* the VOP court had no reason to know that it needed to find that Foster either committed a crime or violated a specific condition of his probation in order to find him in violation. *See* Concurring and Dissenting Op. at 3. As our discussion above reflects, and the Commonwealth concedes, the law has always required a VOP court to make such findings. The VOP court here misapplied the law, improperly relying on an erroneous interpretation of the law handed down by the Superior Court.

resentencing order, Foster may be entitled to credit for the time he served as a result of that order. *See* 42 Pa.C.S. § 9760(1) (providing that a defendant is entitled to credit for time served "for all time spent in custody as a result of the criminal charge").

For the foregoing reasons, we reverse the decision of the Superior Court, vacate the decision of the VOP court and remand the case to the VOP court for proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Todd and Wecht join the opinion.

Justice Todd files a concurring opinion in which Justice Mundy joins.

Justice Dougherty files a concurring and dissenting opinion in which Justice Mundy joins.